[No. 2,842.]

## WM. H. H. COPP *v.* W. P. HARRINGTON, JR.

ACT CURING DEFECTIVE APPLICATIONS FOR LANDS.—The Act of March 24th, 1870, to legalize entries of State lands which were void by reason of a defect in the form or substance of the application, did not have the effect of inserting in the defective application the matter required to make it valid, but made the application good and valid as it was, and legalized the entry.

IDEM.—If an application to enter State land under the Act of 1868 was void because it failed to state that there were no improvements on the land except the applicant's, the curative Act of March 24, 1870, legalized the application, provided no proper application had been filed at the time of its passage, even if at the time it was filed there were improvements on the land belonging to a person other than the applicant.

EFFECT OF CURATIVE ACT.—An Act curing defective applications to purchase lands, does not supply defects in the applications, but legalizes the applications with their defects.

PURCHASE OF LIEU LANDS.—There is nothing in the Statute of 1868 prohibiting a person from purchasing from the State lieu lands on which there are improvements belonging to another than the applicant.

APPEAL from the District Court, Sixth Judicial District, County of Yolo.

The land in controversy was the northwest quarter of the southeast quarter and the southwest quarter of the southeast quarter of section 10, T. 12 N., R. 1 W., Mount Diablo meridian, lying in Yolo County. The plaintiff entered into possession of it in 1859, and remained in possession, cultivating and improving it, up to the time of the trial of this cause. The defendant was a resident of San Francisco, and in December, 1869, made the following application to purchase the land:

"GRANT OF THE 16TH AND 36TH SECTIONS—APPLICATION FOR LOCATION UNDER THE STATE.

"Location No. 1510—Marysville Land District.

SACRAMENTO, ————, 186–.

"I, W. P. Harrington, Jr., of San Francisco County, State of California, do hereby apply under the provisions of an Act entitled "An Act to provide for the management and sale of the lands belonging to the State," approved March

28th, 1868, to purchase and locate the following described land in Yolo County:   The west ½ of the southeast quarter of section ten (10), Township twelve (12) North, Range one west, Mount Diablo meridian, containing eighty acres, according to the returns of the U. S. Surveyor-General, and which I agree to accept in lieu of the full amount of 80 acres, for which I agree to pay to the State of California one dollar and twenty-five cents per acre in gold or silver coin of the United States, in the following manner, viz.: Twenty per cent. of the purchase money, together with interest on the balance, at the rate of ten per cent. per annum, in advance, from the date of approval of the location in the Surveyor-General's office.   This location has been made by me in lieu of the S. E. ¼ of S. W. ¼ of Sec. 16, T. 23 N., R. 2 W.; N. W. ¼ of S. E. ¼ of Sec. 16, T. 26 N., R. 2 W.

"W. P. HARRINGTON, JR.

"STATE OF CALIFORNIA,  }
    County of Yuba.        }

"Location No. 1510—Marysville Land District.

"I, W. P. Harrington, Jr., of San Francisco County, State of California, being duly sworn, depose and say that I am a native born citizen of the United States, and a resident of the State of California, of lawful age, and that there is no occupation of said land adverse to that I now hold.

"Witness my hand 9th day of December, A. D. 1869.

"W. P. HARRINGTON, JR.

"Subscribed and sworn to before me this 9th day of December, 1869.

"B. EILERMAN,
"Clerk, Yuba County, Cal."

The following is the plaintiff's application, made April 30, 1870:

" Grant of the 16th and 36th Sections. Application for location under the State.

"Location No. 1627. Marysville Land District.

"STATE OF CALIFORNIA, County of Sacramento, ss.

"To John W. Bost, Surveyor-General:

"W. H. H. Copp, being first duly sworn, deposes and says that he is a citizen of the United States of America, and a resident of the State of California; that he is over twenty-one years of age; that he is desirous to purchase from the State of California, under the provisions of an act of the Legislature of said State, entitled " An Act to provide for the management and sale of lands belonging to the State," approved 28th March, 1868, and the several acts amendatory thereof and supplementary thereto, the following described land in Yolo County, State of California, to wit: Northwest quarter of the southeast quarter, and the southwest quarter of the southeast quarter of Section ten (10), Township twelve (12) north, range one (1) west, Mount Diablo base and meridian, containing eighty (80) acres, according to the returns of the U. S. Surveyor-General. That he has not entered any portion of any sixteenth or thirty-sixth section, which, together with that now sought to be purchased, shall exceed three hundred and twenty acres, and that there is no occupation of said lands adverse to any that he now holds; that he has had the said land enclosed and in cultivation since the year 1859; for which I agree to pay to the State of California one dollar and twenty-five cents per acre in gold or silver coin of the United States, in the following manner, viz: Twenty per cent. of the purchase money, together with interest on the balance at the rate of ten per cent. per annum in advance, from the date of the approval of the location in the Surveyor-General's office, within fifty days after said approval; and unless such payment is made within said fifty days, then the land above described shall revert to the State without suit, and any approval hereof shall be and become null and void; and the balance of principal, bearing interest at the rate of ten per cent. per annum in advance, within one year after the passage of any

act of the Legislature requiring such payment, or before, if I desire.

"WM. H. H. COPP."

A contest having arisen after the plaintiff filed his application, the Surveyor-General made an order referring the contest to the District Court for trial. The Court below rendered judgment for the defendant, and the plaintiff appealed.

The other facts are stated in the opinion.

*L. J. Ashford,* for Appellant.

At the time respondent made his application to purchase, the law as it then stood, did require the applicant to state under oath "that there is no improvements of any kind on said land other than those of the applicant" (Statutes 1867–8, page 522), but at the time appellant made his application to purchase, to-wit: April 30th, 1870, this section had been amended so as not to require such statement to be made under oath or otherwise. All he was required at that time to state in his application was, "that he is a citizen of the United States, (or if a foreigner, that he has filed his intention of becoming a citizen) a resident of the State," (Statutes 1869–70, page 876, where section 53 of the original act is so amended.) This amendment was approved 4th of April, 1870, and took effect immediately. (See section 9th, of the amended act.) Now the application, under oath, of appellant to purchase the land contained all that was required by the amendatory act and much more.

*Belcher & Belcher,* for Respondent.

Harrington's application, whatever defects it might have had, was made "good and valid" by the act of March 24, 1870, entitled "An Act to legalize certain applications for the purchase of lands belonging to this State." The State may sell its lands to whom it will, and by such methods as it may choose.

By the Court, Rhodes, J.:

The lands in controversy are subdivisions of section 10, township 12 north, range 1 west, and both parties seek to purchase them in lieu of subdivisions of certain sixteenth sections. The defendant's application was filed in the Surveyor's-General's office in December, 1869. The plaintiff's application was filed on the thirtieth of April, 1870. The defendant's application was defective, for the reason, among others, that it failed to state that there were "no improvements of any kind on said land, other than those of the applicant," as required by the fifty-third section of the Act of 1868 (Stats. 1867–8, p. 522.) It having been held in *Hildebrand* v. *Stewart*, 41 Cal. 387, that the application in that case was fatally defective, the Act of March 24th, 1870, "to legalize certain applications for the purchase of lands belonging to this State," was passed (see Stats. 1869–70, p. 352), to the effect that all applications theretofore made under the provisions of the Act of March 28th, 1868, for the purchase of lands, etc., "where there are not two or more applicants for the purchase of the same land, or conflicts between claimants, shall be held good and valid," though the affidavits may be defective "either in form or substance."

At the passage of this act, there were neither two applicants for the purchase of these lands, nor were there any conflicts between the claimants, within the meaning of the act. The direct effect of the act was to make the defendant's application "good and valid." It was approved by the Surveyor-General, on the seventh day of April, 1870, and a certificate of purchase was issued to the defendant on the fourteenth day of the same month.

The plaintiff's application, as already stated, was filed April 30th, 1870, after the approval of the defendant's application, and the issuing of his certificate of purchase. It was made under the provisions of section 53 of the Act of 1868, as amended April 4th, 1870. (Stats. 1869–70, p. 876.) That section provides that the applicant shall "make an affidavit before any officer authorized to administer oaths,

that he is a citizen of the United States (or if a foreigner, then that he has filed his intention of becoming a citizen), a resident of the shall be forwarded to the Surveyor-General." Some portion of the section, it is probable, was omitted by mistake in enrolling the bill, for the clause above quoted, is nonsense. It is unnecessary, in the view we take of this case, to determine whether the plaintiff's affidavit is valid, or even whether under that section, as amended, an application could have been made for the purchase of any other lands than the sixteenth or thirty-sixth sections. If, however, there are pending applications which were made under the latter clause of the fifty-third section as amended, a further curative act might not be inappropriate.

The plaintiff claiming that his own application is sufficient and valid, contends that the defendant's application, though made good and valid by the curative act of 1870, yet is not sufficient to entitle him to purchase the lands. His argument is that the operation of the act was to insert into the defendant's affidavit the omitted matters, so that it would stand in all respects as it would have done, had it complied with the statute at the time it was filed; that it inserted therein the words: "and that there is [are] no improvements of any kind on said land, other than those of the applicant," and that as that statement was not true, the defendant was not entitled to purchase the land. But we think the argument cannot be sustained. No case is brought to our notice, in which that operation was attributed to a curative act. The statute does not supply the defects in the application, but declares that, with all its defects, it shall be held good and valid. Should the statute be held to have inserted into the application the omitted statement it would make the defendant, by construction, guilty of perjury; for it is conceded that it is not true, that there were no improvements on the land, other than those of the defendant.

The plaintiff contends that it was not the intention of the statute to permit lands to be purchased as "lieu lands," upon which there were improvements belonging to others than

CAL. REPS. XLVII—16

the applicant. There is no express provision to that effect in the act of 1868, but the plaintiff argues that the provisions of Section 53, as to the matters required to be stated in the affidavit, necessarily lead to that conclusion. If that be a legitimate inference from those provisions, it cannot of course be deduced from a statute which omits them. The defendant's affidavit having been declared by the statute good and valid, is to be treated as if made under a statute which did not require any statement in regard to improvements on the land sought to be purchased; and the implication claimed by the plaintiff does not arise. The act when it declares that an application shall be "held good and valid" means that it shall be regarded as sufficient in every respect, to entitle the applicant to purchase the lands described in the application. The act provides that an application shall be held good and valid, *provided* there are not two or more applications to purchase the same lands, or a conflict between claimants; and the Court has no power to add a further proviso to this effect; "and, *provided* further, that there are no improvements on the lands other than those of the applicant." In the absence of a proviso to that effect, we see nothing in the act which forbids a person from purchasing lands upon which there are improvements of other persons; and as the defendant's application was first made and was duly approved, we are compelled to hold that his certificate of purchase is valid as against the claim of the plaintiff.

Judgment affirmed. Remittitur forthwith.