[No. 5542.]
# W. J. YOAKUM v. CELSUS BROWER et al.

| 52 | 373 |
| 85 | 534 |

County Surveyor.—A County Surveyor is prohibited, by considerations of public policy, from becoming the purchaser from the State of public lands which his official duties require him to survey.

Act of 1872 Legalizing Purchases of State Lands.—The Act of March 27th, 1872, entitled "An Act for the relief of purchasers of State lands," is retroactive, and legalizes purchases of State lands made by County Surveyors before its passage, provided payment had been made in whole or in part, and a certificate of purchase had been issued to the applicant before any other application had been made to purchase the same land.

Idem.—Said act validates the certificate of purchase, but the title does not pass until full payment has been made. Whether the title passes upon payment without patent is not decided.

Idem.—Said act does not prescribe the time within which the balance of the purchase-money must be paid, and it must, therefore, be paid as prescribed by the general law.

Appeal from the District Court, Sixteenth Judicial District, County of Kern.

A contest having arisen in the office of the Surveyor-General, between the plaintiff and defendant Brower and the purchasers from Baker, that officer, on the 28th of December, 1875, made an order referring the contest to said Court for trial. The defendants, other than Brower, were the heirs and purchasers from Baker. The Court below rendered judgment that the plaintiff, Yoakum, had the right to purchase, and Brower appealed, and H. P. P. Livermore, C. E. Livermore, John H. Redington, and R. E. Houghton also took a separate appeal. The other facts are stated in the opinion.

*Warren Olney*, for Appellants, the Livermores, and Redington, and Houghton.

The Act of March 27th, 1872, (Stats. 1872, p. 587) is not a curative act; it is a grant from the State. It is as follows:

"Sec. 1. When application has been made to purchase lands from this State, and payment made in whole or in part, and a certificate of purchase or patent has been issued to the applicant, the title of the State to said lands is hereby vested in said applicant or his assigns, upon his making full payment

therefor; *providing*, that no application has been made for the purchase of the same lands prior to the issuance of said certificate of purchase; *provided further*, that this act shall not apply to school lands except to the amount of three hundred and twenty acres to any one purchaser."

This statute vests the title in the grantees. No further muniment of title is necessary. No patent is necessary. "The title of the State is hereby vested." *In the land contests provided for by the statute the legal title is still in the State*, and the question submitted to the Court is: Who is entitled under the law to a conveyance from the State?

It was the evident intention of the Legislature, in making the grant, to take away even the power of the State to institute proceedings to recall the title, for the statute provides that when a certificate of purchase or patent has been issued, the title of the State is vested. But in case of patents the title has already vested, and there must have been some object in inserting such a provision. It is apparent what it is for, when the last proviso is considered, which excepts from the operation of the act more than three hundred and twenty acres of school lands. But the statute had provided for nearly twenty years that one purchaser should not be allowed, directly or indirectly, to purchase more than three hundred and twenty acres of school lands. It seems evident, therefore, that there was only one fraud upon the State which was guarded against, to wit, getting more than three hundred and twenty acres school lands. All others were condoned.

The Legislature never could have intended anything more than to refer questions of *law* as to who is legally entitled to purchase to the Courts by the provision of the Political Code referring to land contests.

*Stetson & Houghton*, for Appellant Brower.

*Stewart & Greathouse, J. W. Freeman*, and *H. Edgerton*, for Respondent.

By the COURT:

The lands in controversy were segregated as swamp and overflowed land before June 5th, 1868. Thomas Baker filed his application in the office of the County Surveyor on the 5th day of December, 1868, to purchase the land as swamp and overflowed land; and a survey and field-notes thereof were made by the County Surveyor and filed in his office; and copies thereof and of the application and affidavit were forwarded to the Surveyor-General; and the application and survey were approved by the Surveyor-General on the 21st day of February, 1870. When the application to purchase and the survey and field-notes were made and filed, and the copies thereof forwarded to the Surveyor-General, Baker was the County Surveyor of Kern County—the county in which the lands were situated—and remained such County Surveyor until the first day of January, 1870; but was not such County Surveyor when the application and survey were approved by the Surveyor-General. On the 25th day of March, 1870, Baker paid to the County Treasurer ninety-eight and 40-100 dollars, ($98.40) for twenty per cent. of the purchase-money — the tract containing four hundred and ninety-two (492) acres, and it being sold at the rate of one dollar per acre—and he paid at the same time twenty-four and 50-100 dollars, ($24.50) as the interest on the balance of the purchase-money, for one year in advance, at the rate of seven per cent. per annum, and the County Treasurer issued a receipt for the aggregate of those sums, as for twenty per cent. of the purchase-money and the interest on the balance for one year in advance. A certificate of purchase was issued to Baker June 6th, 1870. Baker died in November, 1872, without having made any further payment on his purchase. On the 26th day of June, 1874, there was paid to the County Treasurer three hundred and ninety-three dollars and sixty cents for the balance of the principal, and the further sum of ninety-six dollars and fifteen cents for the interest thereon, which payments were entered as a credit to Baker's estate on account of said purchase, and the County Treasurer indorsed upon the certificate of purchase a receipt for the aggregate of said sums,

as payment in full of the principal and interest for the tract of land.

Yoakum, the plaintiff, made application to purchase the lands on the 20th day of April, 1871, and Brower filed his application to purchase the lands on the 6th day of July, 1874.

It was held in *Edwards* v. *Estel*, 48 Cal. 194, that the County Surveyor is one of the officers charged by law with duties respecting the sale of lands of the State, and is prohibited by considerations of public policy from becoming the purchaser of lands to which his duties relate. The application of Baker was therefore invalid at the time when it was made, and the copy thereof was filed with the Surveyor-General. The parties claiming under Baker contend that the application and survey having been approved after Baker ceased to be County Surveyor, the case is taken out of the reason of the rule in *Edwards* v. *Estel;* and that even if it did not become effected by those means, the application and the certificate of purchase were made valid by the Act of March 27th, 1872, entitled " An Act for the relief of purchasers of State lands." (Stats. 1871–2, p. 587.) It will not be necessary to consider the first proposition. The first section of the Act is as follows : " When application has been made to purchase lands from the State, and payment made to the Treasurer of the proper county for the same, in whole or in part, and a certificate of purchase or patent has been issued to the applicant, the title of the State to said lands is hereby vested in said applicant, or his assigns, upon his making full payment therefor ; *provided*, that no other application has been made for the purchase of the same lands prior to the issuance of said certificate of purchase ; *provided*, *further*, that this Act shall not apply to school lands, except to the amount of three hundred and twenty acres to any purchaser."

The act has, and it was intended that it should have, a retroactive effect. Its purpose was to afford relief to those who had become purchasers of State lands, but who, because of some defect in the proceedings, or some default on their part, could not, under the laws then in force, procure title to the lands by means of the proceedings already initiated. A purchaser who had made

a valid application, and who had received a valid certificate of purchase, which had been regularly issued, needed no Act for his relief.   The Act is operative not only upon applications which were defective in form, but those which were defective in substance, or were invalid for any other reason, if the lands were for sale by the State, if part payment therefor had been made, and a certificate of purchase or a patent had been issued, and no application had been made by another person for the purchase of the lands, before the certificate was issued.   If those steps in the proceedings for the purchase had been taken prior to the passage of the act, the act operated to validate and confirm the certificate, if no application to purchase the land had been made by another person before the certificate was issued.   The title, however, does not pass until full payment has been made.   It is unnecessary, in this case, to determine whether the act operates as a grant of the title, without the issuing of a patent; but the act, as we construe it, as applied to the facts of this case, renders the certificate of purchase issued to Thomas Baker valid.   The title of the State to the lands, whether it vests by operation of the act, or by virtue of a patent to be issued, does not vest until full payment is made for the land.

As the act does not prescribe the time within which the balance of the purchase-money must be paid, such payment must be made as is prescribed by the general law providing for the sale of swamp and overflowed land.   The fact, therefore, that the payment which was made for the balance of the principal and interest was of too small a sum, does not impair the certificate of purchase, although the heirs and assigns of Baker would not be entitled to have a patent issue to them or for their benefit, or to have the title vest in them by virtue of the act, until full payment is made.

The interest should have been paid at the legal rate—that is, at the rate of seven per cent. for the first year, from the approval of the application—February 21st, 1870 ; and thereafter it became due on the 21st day of February of each year, at the rate of ten per cent. per annum, that having been fixed as the legal rate by the Act of April 4th, 1870.   (Stats. 1869–70, p. 699.) By an erroneous computation too small a sum was received as

the interest at each payment. This error, however, as already stated, does not affect or impair the certificate of purchase, and it is therefore unnecessary to consider the question whether the acknowledgment by the Country Treasurer of the receipt of a certain sum, in full payment of the balance of the principal and the interest, will estop the State to claim that such sum was less than was required by law to be paid for the payment in full for the land.

Judgment reversed and cause remanded, with directions to adjudge that the certificate of purchase issued to Thomas Baker, dated the 6th day of June, 1870, is valid, and that the applications made by said Yoakum and Brower respectively are invalid, and are not entitled to approval by the Surveyor-General.

Remittitur forthwith.