[No. 6,870.—Department One.]

## CHARLES ROWELL *v.* J. J. PERKINS ET AL.

STATE LANDS—APPLICATION TO PURCHASE—AFFIDAVIT—CURATIVE ACT OF MARCH 24TH, 1870.—The affidavit accompanying an application to purchase State lands, under the Act of March 20th, 1868, did not state that the applicant desired to purchase the land, or contain a description of the land. *Held,* that it was insufficient, and the location therefore void; but that the defect was cured by the Curative Act of March 24th, 1870.

ID.—ID.—PAYMENT—CONSTRUCTION OF STATUTE.—The provision of the Act of April 4th, 1870, amendatory of the Act of 1868, to the effect that, in case of failure to make the first payment for the land purchased, within fifty days from the approval of the survey, the land shall revert to the State, and the survey and location become null and void, is merely declaratory of the true sense of the statute.

ID.—ID.—ID.—ID.—CURATIVE ACT OF MARCH 27TH, 1872.—The Curative Act of March 27th, 1872, validated every application to purchase land from the State, where payment had been made in whole or in part to the treasurer

of the proper county, and a certificate of purchase had been issued; and, in all such cases, the applicant, by virtue of the act, acquired a right to complete his purchase, even if, when the application was made, there was an entire failure on the part of the applicant to comply with the existing laws, or the State did not own the land, or had adopted no legislation for the disposition of it.

ID.—ID.—CURATIVE ACT OF MARCH 27TH, 1872.—The *proviso* in the first section of the Act of 1872, "that the act shall not apply to school lands except to the amount of 320 acres to any one purchaser," did not except from the operation of the act cases in which the applicant had previously applied to purchase more than 320 acres of land; but simply provided that no person should acquire title to more than that quantity by virtue of the act. *Held*, accordingly, where it appeared that an applicant had made previous applications for more than the designated quantity, but did not appear that any of such applications came within the terms of the act, that the *proviso* did apply.

ID.—ID.—ID.—The operation of the act, with reference to cases in which payments had been made, and certificates issued at the date of its passage, was not affected by the amendatory Act of April 1st, 1878; but with reference to such cases the original act continued in force.

APPEAL from a judgment for the plaintiff, in the Twenty-second District Court, County of Mendocino. TEMPLE. J.

The facts are stated in the opinion.

*Thomas B. Bond*, for Appellants.

The defect in the affidavit was cured by the Act of March 24th, 1870. (Stat. 1867–68, 511; *Copp* v. *Harrington*, 47 Cal. 236; *Wanzer* v. *Somers*, 53 id. 90.)

The clause forfeiting an application for the non-payment of the twenty per cent. was not in the original act, but was inserted by an amendment made after our payment. (Stat. 1869–70, 876.) The original act did not impose a forfeiture, and, if it did, the delinquency was cured by Act of March 27th, 1872. (Stat. 1871–72, 587; *Yoakum* v. *Brower*, 52 Cal. 373.) No subsequent repeal of the act could divest the defendant of his rights. (*McNear* v. *Hutchinson*, 31 Cal. 177.) The Act of 1868 did not limit the quantity of lieu land that might be purchased by one person. (Stat. 1867–68, § 53, p. 522; *Chapman* v. *Buckman* 39 Cal. 681.)

*Stetson & Houghton*, for Respondent.

The application of the defendant was fatally defective. (*Hildebrand* v. *Stewart*, 41 Cal. 387.) The provision of the

act requiring the first payment to be made within a designated time was mandatory. (*Eckart* v. *Campbell*, 39 Cal. 256 ; *Carpenter* v. *Sargent*, 41 id. 557 ; *Keema* v. *Doherty*, 51 id. 3 ; *Woods* v. *Sawtelle*, 46 id. 390 ; *Hildebrand* v. *Stewart*, 41 id. 387.) When the defendant made his application, there was no act authorizing the sale of any school land other than the 16th and 36th sections. (Act of March 28th, 1868, §§ 52, 53.)

The application was also made before the approval of the survey. (*Mott* v. *Smith*, 16 Cal. 548 ; *Rooker* v. *Johnston*, 49 id. 3 ; *Middleton* v. *Low*, 30 id. 605 ; *Terry* v. *Megerle*, 24 id. 609 ; *C. P. R. R. Co.* v. *Robinson*, 49 id. 446 ; *Finney* v. *Berger*, 50 id. 248.)

The Curative Act of March 24th, 1870, has no application. (*Rooker* v. *Johnston*, 49 Cal. 3 ; *Copp* v. *Harrington*, 47 id. 236.) Nor has the Act of March 27th, 1872. By the latter act title is vested in the applicant only *upon his making full payment therefor.* (*Yoakum* v. *Brower*, 52 Cal. 377 ; *Montgomery* v. *Kasson*, 16 id. 189.) The appellant therefore acquired no vested right ; and the Act of April 1st, 1878, operated as a repeal of the act. (*Tucker* v. *Ferguson*, 22 Wall. 574 ; *Billings* v. *Harvey*, 6 Cal. 381 ; Sedgwick Const. and Stat. Law, 129 ; Dwarris on Statutes, 676.)

McKINSTRY, J.:

This is an action to determine a contest which had arisen in the State land office with respect to the right to purchase certain lands from the State.

The cause was submitted upon an agreed statement, from which it appears:

1. That defendant, J. J. Perkins, on the 3rd day of September, 1869, presented to and filed with the Surveyor-General of the State an application to purchase the land described in the complaint. That the application was sworn to on the 31st day of July, 1869.

2. That defendant Perkins was, when he filed his application, duly qualified to make such application.

3. That on the 7th day of August, 1869, the lines of the land in suit were run by the proper officers of the United States,

and corners set, and that such survey was approved by the United States Surveyor-General of California on the 13th day of October, 1869, and on the same day a plat or map of said survey was filed in the United States land office for the San Francisco district.

4. That the land was listed to the State July 21st, 1870.

5. That on the 15th day of January, 1870, the Surveyor-General approved the application of defendant Perkins.

6. That on the 9th day of March, 1870, defendant Perkins paid to the county treasurer of the proper county twenty per cent. of the purchase price of said land, and interest on the balance to January 1st, 1871.

7. That on the 7th day of May, 1870, the register of the State land office issued a certificate of purchase to defendant Perkins, and at that time no other application for the land was on file.

8. That on the 28th day of July, 1873, defendant Ross filed an application for the land, and afterwards abandoned it.

9. That on the 14th day of October, 1876, defendant Adams filed an application, and filed a disclaimer in the case.

10. That on the 12th day of May, 1876, plaintiff filed an application for the land in suit in due form, and that he was, at " the time said application was made and filed, fully qualified to make said application."

11. The plaintiff filed a protest in the Surveyor-General's office, and demanded that the case be sent to the proper Court for adjudication.

12. That pursuant to such demand the contest was, on the 27th day of July, 1878, referred to the proper Court.

13. That on September 21st, 1878, the suit was commenced.

14. That defendant Perkins, prior to filing the application for the land in suit, had applied for more than 320 acres of land in lieu of the 16th and 36th sections, and prior to June 1st, 1872, and received certificates of purchase for such land.

In his points, appellant says: "The application of defendant Perkins was attacked in the Court below, upon the ground of an alleged defect in the affidavit. We submit, the affidavit was substantially as required by the statute, and in the exact form prepared by the register, as provided in § 16 of the Act of

March 28th, 1868." (Stats. 1867–68, p. 507.) The fact is un-
disputed, however, that the affidavit did not state that the
applicant desired to purchase the land, and did not contain a
description of the land. The location and entry were therefore
invalid. (*Hildebrand* v. *Stewart*, 41 Cal. 387.)

It is urged by the appellant that the defect in the application
was cured by the Act of March 24th, 1870 (Stats. 1869–70,
p. 352). The first section of the Act reads : "All applications
heretofore made for the purchase of lands belonging to this
State, under the provisions of an Act entitled ' An Act to provide
for the management and sale of lands belonging to the State,'
approved March 28th, 1868, where there are not two or more
applicants for the purchase of the same land, or conflicts between
claimants, shall be held good and valid, although the affidavits
on which such applications are based may not be in compliance
with the provisions of said Act either in form or substance."

The evident purpose of the Act was to cure the defect when
previous applications to purchase had been accompanied by an
insufficient affidavit. The defendant is right, therefore, in claim-
ing that his application should be treated as if it had been ac-
companied by the proper affidavit. If, for other reasons, he
acquired no right by virtue of his application, they are to be
considered separately. If the application was good in other
respects, the Act of 1870 made the affidavit sufficient. It legal-
ized the application so far as the affidavit is concerned. (*Copp*
v. *Harrington*, 47 Cal. 236 ; *Wanzer* v. *Somers*, 53 Cal. 90.)

It is claimed by respondent that defendant Perkins failed to
make payment of twenty per cent. and interest, as required by
the provisions of §§ 23 and 51 of the Act of 1868 ; and that
those provisions are mandatory. In support of this position
respondent cites *Eckart* v. *Campbell*, 39 Cal. 256 ; *Carpenter* v.
*Sargent*, 41 id. 557 ; and *Keema* v. *Doherty*, 51 id. 3. In
*Eckart* v. *Campbell*, it was held, that an applicant who failed to
pay the twenty per cent. within fifty days might be considered
by the Surveyor-General as having abandoned his exclusive
right to purchase, and that such failure justified the officer in
issuing a new certificate to another applicant. *Carpenter* v.
*Sargent* decided that a county treasurer could not be compelled
by mandamus to accept the amount of a first payment tendered

after the period prescribed by the Act of 1863 (Stats. 1863, p. 591, § 1), but was justified in treating the proposed purchase as abandoned. In *Keema* v. *Doherty*, however, it was explicitly held that if a treasurer receives money after the expiration of thirty days, within which the first payment is required to be made upon the purchase of swamp lands, the entry is void, and the land open to location by another. We can conceive of no distinction based upon the difference in the character of the lands—the statute being substantially the same with reference to the necessity of making the first payment within a limited time. The Act of April 4th, 1870, amendatory of the statute of 1868, and containing the clause, that, in case of a failure to make the first payment within the fifty days, the land "shall revert to the State, and the survey and location become null and void," is merely declaratory of the sense of the statute as previously construed.

Appellant claims, however, that the delinquency was cured by the Act of March 27th, 1872. (Stats. 1871–72, p. 587.)

Defendant Perkins (appellant) filed his application September 3rd, 1869, and this was approved by the Surveyor-General January 15th, 1870. On the 9th day of March, 1870, appellant paid to the proper county treasurer twenty per centum of the purchase price; and May 7th, 1870, the register issued a certificate of purchase to him.

The first section of the act last above referred to is as follows:

"When application has been made to purchase lands from this State, and payment made to the treasurer of the proper county for the same, in whole or in part, and a certificate of purchase or patent has been issued to the applicant, the title of the State to said lands is hereby vested in said applicant, or his assigns, upon his making full payment therefor; *provided*, that no other application has been made for the purchase of the same lands prior to the issuance of said certificate of purchase; *provided further*, that this act shall not apply to school lands, except to the amount of three hundred and twenty acres to any one purchaser."

It is argued by respondent that this law has no application, because under it the applicant acquires a vested right only "upon his making full payment therefor." But this, as it seems

to us, suggests an error as to the construction of the statute. It is true the words are used: " The title of the State to said lands is *hereby vested* in said applicant, or his assigns, *upon his making full payment therefor.*" Payment to whom, and when? We must resort to the general law to ascertain. In *Youkum* v. *Brower,* 52 Cal. 373, it was held that the Act of March 27th, 1872, *validated the certificate of purchase,* and gave to the holder of such certificate the title, or a right to demand the patent as evidence of title, upon *full payment.*

It is asserted by respondent that the first section of the Act of March 27th, 1872, was repealed by the first section of the Act of April 1st, 1878. (Stats. 1877–78, p. 914.) The first section of the last act reads:

" Section 1 of said act is hereby amended so as to read as follows: Section 1. When application has been made to purchase lands from this State, and payment made to the treasurer of any county of this State, in whole or in part, and a certificate of purchase or a patent has been issued to the applicant, the title of the State to said lands is hereby vested in said applicant, or his assigns, upon his making full payment therefor ; *provided,* that no other application has been made for the purchase of the same lands prior to the issuance of said certificate of purchase ; *provided further,* that this act shall not apply to school lands, except to the amount of three hundred and twenty acres to any one purchaser ; nor shall it be construed to remedy any defect in any application, or the issuing of any certificate other than that of payment in the wrong county, nor otherwise to conflict with or limit the provisions of the act hereby amended."

The last proviso, by its terms, declares that the act shall not be construed " to conflict with or limit the provisions of the act hereby amended."

It is not necessary to inquire whether, with respect to applications made *after* the Act of 1872 took effect, the Act of 1878 remedied any defect " other than that of payment in the wrong county." It would be a grave question whether the Legislature had *power* to deprive those whose applications had been cured by the Act of 1872 of their right—perhaps *vested*—to purchase on making " full payment." It is enough to say that the Legislature has not attempted to employ that power. On the

contrary, it has recognized and protected—if express protection was necessary—the rights of such persons. The clause that the Act of 1878 shall not " conflict with nor *limit* the provisions of the act amended" (except so far as the confirmation of applications in cases where the payment had been made to the wrong treasurer might be construed to make a conflict), we take to be the equivalent of a declaration that the Act of 1872 shall continue in full force and operation as curative of the applications to which it had reference, to wit: those made prior to its passage, where part or full payment had been made to the proper treasurer.

From what has been said, it sufficiently appears that defendant—who made first payment in the proper county—has, by virtue of the Act of 1872, acquired a right to complete his purchase in the land office, even if the lands he applied for were not the property of the State, or were not subject to location or disposition, when he filed his application. It might be admitted, for the purposes of this decision, that, when defendant's application was made or filed, there was no law authorizing State officers to sell any school lands other than the 16th and 36th sections, and that the lands in controversy were not "surveyed" when the deputy surveyor had run the lines in the field, nor until the approval of the Surveyor-General. This approval was given October 13th, 1869—after defendant's application was verified and filed. It may be admitted, also, as a matter of law, that the application filed before the approval of the Surveyor-General was invalid.

But no application was made by *plaintiff* (respondent) until the 12th day of May, 1876; and the Act of March 27th, 1872, is very broad and comprehensive. It validates every application to purchase lands "*from the* State," where payment has been made, in whole or in part, to the treasurer of the proper county. When the Act of 1872 was passed, the State owned the land, and by that act disposed of it. It had received a portion of its value, and had full power to confirm or perfect— conditionally or otherwise—any attempted purchase, even if, when the application was made, there was an entire failure on the part of the applicant to comply with the existing laws; or if the State did not then own the land, or had adopted no

legislation for the disposition of it. The Act of 1872 does not purport merely to make good a .certificate issued to one who had applied for lands which could legally be sold when the application was made. It made valid and effective every certificate issued to one who had paid the purchase price, in whole or in part, to the treasurer of the proper county; that is, to the treasurer who, at the time such payment was made, was authorized by the laws then in operation to receive the installment payable upon such lands as were subject to sale.

A comparison of the language employed in the Act of March 24th, 1870 (commented upon in *Rooker* v. *Johnston*, 49 Cal. 3), with that of the Act of March 27th, 1872, will show the latter to cover a much larger range than the former. The former declared that all " applications " theretofore made should be held good and valid, although the affidavits on which the applications were based were not regular. It dealt with " applications" alone. But the Act of 1872 declared " the title of the State to said lands—lands in respect to which an application and part payment had been made and certificate issued—*is hereby vested in said applicant*, upon his making full payment therefor." It gave the applicant an estate—the right to acquire the title—upon full payment.

Perhaps a more difficult question arises upon the fourteenth subdivision of the foregoing agreed statement of facts.

The statute of 1872 confers upon the holder of a certificate, where part payment has been made to the proper treasurer, the right to. complete his purchase, *etc.*, provided that the act " shall not apply to school lands, except to the amount of 320 acres to any one purchaser."

It will be observed the *proviso* does not declare, that, if applications have been made by one person for more than 320 acres of school lands, the applications must be held good in the order in which they were filed. It declares, in effect, that no one person shall take advantage of its privilege to secure a title to more than 320 acres of school lands by payment of the balance of the purchase price. The *agreed statement* is not that appellant, by payment of the balance of the purchase money, and appropriate proceedings in the land office, has obtained the title of the State, or acquired a right absolute to a patent, for any school

lands other than those in controversy.   Nor is it even agreed that appellant has ever made part payment for any other lands. It cannot be said with any degree of positiveness, that he must have made part payment, because it is agreed that he has received *certificates* for other lands.   The history of the curative legislation, which has above in part been made to appear, shows very clearly that certificates of purchase have been issued where the laws did not authorize them, and overcomes any persumption that the officers always discharged their duty in that regard. If, in respect to the applications referred to in the fourteenth subdivision of the agreed statement, payment was not made in whole or in part, they were not validated, and appellant acquired no rights by virtue of them under the Act of 1872.   It not appearing, therefore, from the agreed statement that, as to applications for school lands made by appellant (being for school lands other than those in the controversy), any payment was made, and it not appearing that as to such other lands appellant has sought to perfect his purchase, the last *proviso* of the first section of the Act of 1872 does not inhibit the appellant's prosecution of his demand to purchase the lands in respect to which the present contest has arisen.

It follows, that the judgment must be reversed, and the cause remanded for further proceedings.

So ordered.

Ross, J., and McKee, J., concurred.