[No. 6,974.—In Bank.]
November 28, 1882.

## E. I. UPHAM v. WILLIAM HOSKING.

TITLE TO TIDE LANDS UNDER CURATIVE ACT OF MARCH 27, 1872.—Plaintiff claims title to a portion of the lands sued for in this action of ejectment under State patent issued May 18, 1872. The premises embraced in the patent are below high-water mark, and include a wharf which extends into the water to such depth that vessels can be moored at it for receiving and discharging cargo.

*Held:* 1. Such tide lands were not subject to sale under the Act of 1868.

2. But the curative Act of March 27, 1872, validated sales of such lands, and the title of the State vested in the plaintiff under that Act.

PRESUMPTION AS TO THE DISCHARGE OF OFFICIAL DUTY.—To the objection that it did not appear that plaintiff had a certificate of purchase when the Act of 1872 went into operation and therefore was not entitled to the benefit of its provisions.

*Held:* The plaintiff is entitled to the presumption that the officer issuing the patent, regularly performed his duty in issuing it to him, and that he

would not have issued it had not the plaintiff brought himself within the provisions of the curative Act.

TOWN.—The evidence shows that the place called Collinsville was not a town.

RESERVATION IN DEED—HOUSE NO PART OF WHARF.—In a deed of conveyance from one B. to the plaintiff for a part of the premises in dispute, there was a reservation of "the wharf and wharf franchises."

　　*Held:* A house, a portion of which was on the premises in controversy, and which according to the evidence was built on piles adjoining and "butting up" against the wharf, was no part of the wharf, and therefore not included in the reservation.

FORFEITURE OF FRANCHISE DECLARED BY STATUTE.—As to the remaining portion of the premises there had not been a compliance with the terms of a grant by the Legislature to one C., under whom the defendant claimed, and all rights thereunder had been forfeited to the state before the accrual of the title claimed by the plaintiff. No action was necessary to enforce or to judicially establish the forfeiture. It was declared by statute, and when so declared the title to the thing forfeited immediately vested in the state upon the happening of the event or the commission of the offense for which the forfeiture was declared.

APPEAL by defendant from the judgment of the District Court of the Seventh Judicial District in and for the County of Solano, and from an order denying a motion for a new trial. WALLACE, J.

Action of ejectment. The evidence as to the house claimed to have been reserved in the deed, and from one Brown to the plaintiff, was as follows:

Testimony of C. K. Marshall:

"Question. You know the end of the house that extends over into the swamp land?

"Answer. Yes, sir.

"Q. Is that building the same structure as the wharf itself—a body of piles altogether—a wharf on portion and a house on portion, altogether?

"A. It is built on piles.

"Q. The house joins the wharf itself?

"A. Yes, sir.

"Q. The house and wharf are all together, are they not?

"A. They are both on piles right together.

"Q. Joined right together?

"A. Yes, sir; butt up together.

"Q. It does not extend any further on the wharf now—or how is it—than then?

"A. No, sir.

"Q. It is precisely as built in 1861, as far as the foundation is concerned?

"A. Yes, sir."

The Court below found that the land included in the plaintiff's location and in the patent to him is not and never has been situated within two miles of any town whatever. This finding was attacked by the defendant on the ground that it was within two miles of a place called and known as Collinsville, and that Collinsville was a town. The evidence relied on to show that Collinsville was a town, was as follows: 1. An Act of the Legislature of March 30, 1868, entitled "an Act to authorize the establishment of a steam ferry between Collinsville in Solano County and New York Landing and Antioch in Contra Costa County." 2. In the patent from the State to the plaintiff, the " bridge leading on to Collinsville wharf" is mentioned as one of the calls in the description of the land. 3. In the deed of conveyance from Brown to the plaintiff, he, the plaintiff, is described as " of Collinsville." 4. One of the witnesses (Hooper) testified that between the years 1867 and 1876, considerable business was done at and over the wharf, and that a portion of that time several steamers occasionally landed there. 5. Another witness (Charles J. Collins) testified that after the building of the wharf in 1861, " the town was named Collinsville after that; about that time we applied for a post-office there, and they named it Collinsville." Q. " Was there a post-office there at that time or soon after ? " A. " Soon after." 6. Another witness (Turner) testified that he ran a ferry from Antioch to Collinsville. 7. Another witness (Marshall) testified that his home since 1853 had been in Collinsville, but at the time of the trial he was County Recorder and lived in Fairfield.

The other facts are stated in the opinion of the Court.

*B. S. Brooks* and *Wm. Leviston,* for Appellant.

The existence of Collinsville is assumed all through the case, and it appears to be a place of considerable importance. It has existed since 1861, is a post-town, a place where all steamers on the river land, and where a large business is done; and is clearly a town or village. Plaintiff names it in his

deed as the town where he resides. Respondent does not question the existence of Collinsville. The defense was expressly alleged in the answer that said land is situated within two miles of the Town of Collinsville, Solano County, and was at time of survey.

The finding is, "is not and never has been situated within two miles of any town whatever." This does not meet the issue. If it means that the land is not within two miles of Collinsville, the patent confutes the finding, for one of the calls of the patent is the Collinsville wharf. It certainly is not a finding that Collinsville has no existence. Nor that it is not a town or village. The confirmatory Act of 1872 does not apply. That Act was only intended to cure defects in the proceedings under the Acts providing for the sale of such land as had been authorized by the State. In *Yoakum* v. *Brower*, 52 Cal. 376, cited by respondent, it was said that the "purpose of the Act was to afford relief to those who had become purchasers of State lands, but who, because of some defect in the proceedings or default on their part, could not, under the laws then in force, procure title by means of the proceedings already instituted." In *Rowell* v. *Perkins*, 56 Cal. 220, there were a defective application and a default in payment, and the decision was to the same effect. Anything in these decisions to the effect that the land granted was any land that might have been applied for, is *obiter dictum*. No such matter was before the Court.

The Act of 1872 is to be construed in connection with the acts providing for the sale of lands of the State, and to which it evidently refers. To hold that it grants the land in controversy, is directly contrary to the decision in *Kimball* v. *MacPherson*, 46 Cal. 103, which says that the Act of 1868 (under which plaintiff claims) although it mentions "tide lands," does not authorize or provide for the sale of the class of land in controversy.

*J. F. Wendell*, for Respondent.

The testimony shows, without contradiction, and the Court finds, that although eighteen years had elapsed since the passage of the Act, no ferry was ever established, and the grantee utterly failed to comply with any of the requirements

of the Act save the building of a wharf on the Solano side. This worked a forfeiture. · No judicial proceedings were necessary on the part of the State, but the rights conferred at once ceased and determined upon the happening of the event for which the statute denounced the forfeiture. (*Oakland R. R. Co.* v. *O. B. & F. V. R. R. Co.*, 45 Cal. 365; *Borland* v. *Lewis*, 43 Cal. 569; *Clarke* v. *Calloway*, 1 Sneed (Ky.), 46; reported in vol. 2 Am. Dec., p. 706.)

The only ground of attack upon the patent alleged in defendant's answer is that the premises granted· are situated within two miles of the town of Collinsville. The Act of March 28, 1868, providing for the sale of State lands (Stat. 1867–8, p. 514), Section 70. as amended April 4, 1870 (Stat. 1869–70, p. 877), reserved from sale "tide-lands * * within two miles of any town or village." Upon this point the Court finds that the land is not situated within two miles of any town. Webster defines a town as "any collection of houses larger than a village and not incorporated as a city." There was no evidence of any town incorporation or of any such collection of houses as would constitute a town in fact. A town on paper or in name only would not come within the exceptions. All post-offices have names. The inference from the entire testimony is that there was no town in fact, and in the absence of express testimony the presumption that the patent was legally issued sufficiently sustains the finding of the Court.

Even were the patent objectionable on the grounds urged by the defendant, the defect would be absolutely cured by the curative Act ·of· March 27, 1872 (Stat. 1871–2, p. 587), entitled "An Act for the relief of purchasers·of State lands;" Section 1 of which provides that "when application has been made to purchase lands from the State and payment made to the Treasurer of the proper county for the same in whole or in part, and a certificate of purchase or patent issued * * * the title of the State is hereby vested in said applicant," etc. The record shows that the patent in question was issued May 18, 1872, upon a location surveyed in April, 1870, and approved August 6, 1870.

The record does not show the date of the payments or. of the certificate of purchase, but under the law it must have

been in 1870, and the patent itself is *prima facie* evidence,
at least, that the law was complied with. The burden of
proof is on the defendant to show that the patent was not
authorized by the curative Act of 1872, even though it could
be successfully assailed in the absence of that Act. "A party
claiming land under a patent has the benefit of the presump-
tion that the officers rightfully performed all their duties in
selling the land and issuing the patent, and it devolves upon
the party assailing the patent to show that it was issued
without authority of law." (*Collins* v. *Bartlett*, 44 Cal. 383;
*Hodapp* v. *Sharp*, 40 Cal. 69; *Toland* v. *Mandell*, 38 Cal. 30.)
"The burden of proof is cast on the one who undertakes to
impeach the patent to establish the facts necessary for its
overthrow." (*People* v. *Stratton*, 25 Cal. 243; *Summers* v.
*Dickinson*, 9 Cal. 556; *Durfee* v. *Plaisted*, 38 Cal. 83.)

THORNTON, J.:

Action to recover possession of certain lands described in
the complaint, situate in the County of Solano. The plaintiff
had judgment. Defendant moved for a new trial, which was
denied, and he prosecutes this appeal from the judgment and
order just mentioned.

As to a portion of the land sued for (part of Swamp Land
Survey No. 17), on which was a portion of a building, it is
admitted that the title was in one Brown, and that the con-
veyance from him to plaintiff passed to the latter Brown's
title to that portion of the lot which was covered by the
building, unless excluded from the operation of the conveyance
by a reservation contained in it of "the wharf and wharf
franchises." On the premises in controversy was a wharf
and a part of the building above mentioned.

It is contended here that this building constituted a portion
of the wharf, and was embraced in the reservation aforesaid,
and, therefore, did not pass to the plaintiff under Brown's
conveyance.

On an examination of the evidence, we are of opinion that
this contention is untenable, that the building did not con-
stitute a part of the wharf, and was not, therefore, reserved
from the operation of the deed.

As to the remaining portion of the premises sued for, the

defendant claimed under a grant on certain conditions made to one Collins, in which grant it was provided that on failure to comply with the conditions, all the rights granted by the Act should become forfeited to the State. The Court below found and held that there had not been a compliance with the terms of the grant, and that all rights under the Act had been forfeited to the State before the accrual of the title claimed by plaintiff. This matter will be better understood from the findings of the Court in regard thereto. They are as follows:

"As to the affirmative matter alleged in defendant's answer, the Court finds: That a private statute of the State of California was enacted by the Legislature thereof entitled and approved as alleged in said answer, the whole of which statute is contained in the printed statutes of California for the year 1861, on page 300 thereof. That by the terms thereof there was granted to one C. J. Collins, his associates and assigns, for the term of twenty years from the date of May 6, 1861, the right to establish a ferry across the upper end of Suisun Bay, from the point known on Ringold's map of Suisun Bay as 'Point Collberg' in Solano County, to a place known as New York, in Contra Costa County, and said parties were also authorized to construct a wharf at each of the landing places of said ferry, one in Solano County and one in Contra Costa County, which wharves were required by said Act to be substantially built, of such materials and of such dimensions as to make said wharves sufficient for all the purposes of a steam ferry as well as for the local business of the two points; and from time to time said wharves were required to be enlarged as the commerce of the places might require.

"That by the terms of the said Act there was granted to the said C. J. Collins, his associates and assigns, for the purposes of the ferry and wharves aforesaid, the use and occupation of a strip of land at each of the said wharves, commencing at high tide six hundred (600) feet wide along the water-line in Solano County and three hundred (300) feet wide along the water-line in Contra Costa County, and commencing at high-water mark and running into the bay to a point where the water is ten feet deep at low tide.

"That all of said grants, rights, and privileges, however,

were made upon the terms and conditions expressed in Section 4 of said Act, which is as follows:

"Section 4. The said parties herein named shall within six months from the passage of this Act commence the building of the wharves herein provided for, and within nine months shall have the steam ferry in operation, with a steam ferry boat running between said wharves of sufficient capacity to accommodate the public travel; *provided,* that if the said parties shall fail to commence and complete the said wharves and establish the said ferry within the time prescribed in this Act, or in any other manner violate its provisions, then all the rights granted by this Act shall become forfeited to the State.

" That neither the said C. J. Collins, his associates or assigns, being the parties in said Act named, ever complied with any of the requirements of said Section 4 of said Act, except that the wharf described in plaintiff's complaint was commenced by said Collins within six months from the passage of said Act and thereafter completed by him.

"That neither said Collins, his associates or assigns, ever established or put in operation any ferry of any kind between the points named in said Act, or between either of said points and any other point, and never commenced building, or completed, or owned any wharf whatever in said Contra Costa County, but totally failed to comply with each and every requirement of said Act, except as to building the wharf in Solano County, as aforesaid. That eighteen years have elapsed since the passage of said Act.

" That by reason of such non-compliance, all the rights and privileges granted by said Act to said Collins, his associates and assigns, became forfeited to the State of California.

"That said land at all the times mentioned in said answer was subject to sale, and had never been at any time reserved by the State of California from sale."

In regard to this last proposition the Court decided correctly both in point of law and fact. No action was necessary to enforce the forfeiture. It needed not to be established judicially. The forfeiture was declared by statute, and when so declared, the title to the thing forfeited immediately vests in

the State, upon the happening of the event or the commission of the offense for which the forfeiture is declared. This is settled law in this State; so held under like circumstances in *Borland* v. *Lewis,* 43 Cal. 572, and *O. R. R. Co.* v. *O. B. & F. V. R. R. Co.,* 45 id. 377. The plaintiff claims title to the said last mentioned portion of land under a patent from the State of California, bearing date the eighteenth day of May, 1872. The premises embraced in the patent are below high-water mark and include the wharf, which extends into the water of such depth that vessels can be moored at it for receiving and discharging cargo.

On an examination of the cases of *Taylor* v. *Underhill,* 40 Cal. 471; *Kimball* v. *MacPherson,* 46 id. 103; and *People* v. *Cowell,* 60 Cal. 400, we are of opinion that such tide lands were not subject to sale under the Act of 1868. Such we think is the proper interpretation of the judgment of this Court in *Kimball* v. *MacPherson,* which case arose under the Act of 1868—the same Act under which the plaintiff made his application. At the close of the opinion in this case the Court used this language: "Nothing short of a very explicit provision to that effect would justify us in holding that the Legislature intended to permit the shore of the ocean between high and low-water mark to be converted to private ownership." *People* v. *Cowell* is in the same line of decision. (See also *People* v. *Morrill,* 26 Cal. 336.) *Taylor* v. *Underhill* was also an application under the Act of 1868, and although the point in judgment was that tide land belonging to the State by virtue of its sovereignty could not be purchased under an application for swamp and overflowed land, the remarks of the Court as regards the Act of 1868 accord with the conclusions reached in *Kimball* v. *MacPherson.*

Although the land sought to be purchased was on the shore of the ocean, still the same reasoning applies to the land between high and low-water mark everywhere. We do not think that the Court intended to hold that such portions of the tide lands between high and low-water mark, which could be used for commercial purposes, as could be reclaimed for agricultural purposes, were subject to sale, and those which could not be reclaimed were not subject to sale, but that in

their judgment the tide lands subject to sale and purchase were those described in *People* v. *Morrill,* 26 Cal. 355, as the channels of greater or less width within the ebb and flow of the tide, threading the swamp lands, which channels are of little or no use either in the way of fishing or navigation. Note the observations of the Court on this point in 26 Cal. 356.

But it is said that this defect is cured by the fourth section of the Act of twenty-seventh of March, 1872. It was said in *Rowell* v. *Perkins,* 56 Cal. 226, of this Act: "The Act of March 27, 1872, is very broad and comprehensive. It validates every application to purchase land from the State when payment has been made, in whole or in part, to the Treasurer of the proper county. When the Act of 1872 was passed, the State owned the land, and by that Act disposed of it. It had received a portion of its value, and had full power to conform or perfect, conditionally or otherwise, any attempted purchase, even if when the application was made there was an entire failure on the part of the applicant to comply with the existing laws, or if the State did not then own the land or had adopted no legislation for the disposition of it." This ruling was approved and followed in *Muller* v. *Carey,* 58 Cal. 538.

That the State is the owner of the land embraced in the patent is declared by Section 670 of the Civil Code, and in accordance with the rule laid down in the cases just cited, we hold that the title of the State vested in the plaintiff by virtue of the Act of March 27, 1872.

It is urged that the Act of 1872 is retrospective (it was so held in *Johnson* v. *Squires,* 55 Cal. 103), and that inasmuch as it does not appear that the plaintiff had a certificate of purchase when the Act of 1872 went into operation, he is not entitled to the benefit of its provisions. But we think that the plaintiff is entitled to the presumption that the officer issuing the patent regularly performed his duty in issuing it to him, and that he would not have issued it, had not plaintiff brought himself within the provisions of the curative Act of 1872.

An objection is made to the title of plaintiff that the land patented to him was within two miles of the Town of Collinsville. But the Court in its findings negatived this, and we

think such finding is sustained by the evidence. The evidence shows to us that the place called Collinsville was not a town.

Judgment and order affirmed.

MORRISON, C.J., and MCKEE and SHARPSTEIN, JJ., concurred.

MCKINSTRY and MYRICK, JJ., concurred in the judgment.