[Sac. No. 545. Department Two.—November 6, 1899.]

## CENTRAL PACIFIC RAILROAD COMPANY, Appellant, v. HENRY McCANN, Respondent.

PUBLIC LANDS—CLAIM, WHEN ATTACHES—ENTRY.—No pre-emption or homestead claim attaches to a tract of land until an entry in the local landoffice.

ID.—GRANT TO CENTRAL PACIFIC RAILROAD—EXCEPTION FROM GRANT—PRE-EMPTION.—Under section 3 of the act of Congress of July 1, 1862, granting lands to aid in the construction of the Central Pacific Railroad, public land of the United States, which would otherwise pass by the grant, is not excluded from the operation thereof merely because a person possessing the qualifications of a pre-emptioner had settled upon the land during the year 1859, and continued to reside upon it, performing all the acts required of a pre-emptioner, until after the time when the line of the railroad was definitely fixed, and prior to such time had applied at the proper landoffice to make a pre-emption filing therefor, if permission so to do was refused by the register of the land-office, and he did not appeal from such refusal, and after the road had been definitely fixed he moved off the land without having filed any claim for it.

ID.—REFUSAL TO FILE CLAIM—PRESUMPTION OF REGULARITY.—It will be presumed, in the absence of any showing to the contrary, that the refusal of the register of the landoffice to file the declaratory statement of the alleged pre-emptioner was proper.

APPEAL from a judgment of the Superior Court of Placer County. J. E. Prewett, Judge.

The facts are stated in the opinion.

William Singer, Jr., and H. V. Reardan, for Appellant.

F. P. Tuttle, for Respondent.

COOPER, C.—Defendant's demurrer to the third amended complaint having been sustained, judgment was entered in his favor. This appeal is by plaintiff from the judgment and for the purpose of reviewing the order sustaining the demurrer. The complaint, which is in ejectment, shows that the lands described therein vested in plaintiff under an act of Congress of July 1, 1862, unless a pre-emption claim of one David Shay had attached thereto at the time the line of plaintiff's road was definitely fixed, which was prior to November 15, 1867, but the

date is not given. Section 3 of the act is as follows: "That there be, and is hereby, granted to the said company; . . . . every alternate section of public land, designated by odd numbers, to the amount of five alternate sections per mile on each side of said railroad, on the line thereof, and within the limits of ten miles on each side of said road, not sold, reserved or otherwise disposed of by the United States, and to which a pre-emption or homestead claim may not have attached at the time the line of said road is definitely fixed."

The sixth allegation of plaintiff's amended complaint is as follows:

"6. The plaintiff is informed and believes that one Daniel Shay, a qualified pre-emptor, settled upon the said land during the year 1859, and continued to reside upon it, performing all the acts required of a pre-emptor, until after the said railroad was definitely fixed; and prior to the time the said road was definitely fixed he applied at the proper landoffice to make a pre-emption filing therefor, and was refused permission so to do by the register thereof, but did not appeal from such refusal—and during the year 1867, after the said road had been definitely fixed, he moved off the said land, without having filed any claim for it."

The defendant does not claim under Shay, and there is no privity shown in any manner between defendant and said Shay. The sole and only question discussed in the briefs is as to whether or not the paragraph of the complaint here quoted shows that the pre-emption claim of Shay had attached to the lands at the time the line of plaintiff's road was definitely fixed. If it had attached then the lands were not vested in plaintiff under the said act. The court below held that the said paragraph of the complaint showed that the pre-emption claim had attached, and that plaintiff did not become the owner of the lands under said act. In this we think the learned judge of the court below was in error.

The rule is well settled that no pre-emption or homestead claim attaches to a tract of land until an entry in the local landoffice. (*Lansdale v. Daniels*, 100 U. S. 116; *Whitney v. Taylor*, 158 U. S. 94; *Northern Pac. R. R. v. Colburn*, 164 U. S. 386; *Weaver v. Fairchild*, 50 Cal. 362.)

The main purpose of the exception of lands to which a homestead or pre-emption had attached was to prevent the grant from having a retroactive effect so as to convey lands to which a valid claim had taken effect prior to the date of the passage of the statute. (*Kansas Pac. Ry. Co. v. Dunmeyer*, 113 U. S. 635.) In the latter case it is said by the court: "Of all the words in the English language this word 'attached' was probably the best that could have been used. It did not mean mere settlement, residence or cultivation of the land, but it meant a proceeding in the proper landoffice by which the inchoate right to the land was initiated. It meant that by such a proceeding a right of homestead had fastened to that land which could ripen into a perfect title by future residence and cultivation."

The pre-emption claim could not and did not attach or fasten itself to the land in this case because it was never filed or placed on record. (*Whitney v. Taylor, supra; Landsdale v. Daniels, supra.*)

It is said that the allegation that Shay applied at the proper landoffice to make a pre-emption filing, and was refused permission to do so by the register thereof, is the equivalent in law to the actual filing, and shows that the pre-emption claim attached to the lands. We do not think so. The register refused to file the declaratory statement, and Shay did not appeal from the order. We must presume, in the absence of any showing to the contrary, that the register correctly performed his official duty. (Code Civ. Proc., sec. 1963, subd. 15; *Upham v. Hosking*, 62 Cal. 259; *Weaver v. Fairchild*, 50 Cal. 360.)

In the latter case, the question was as to whether it was proved that the line of the railroad was definitely fixed before the declaratory statement of the defendant as pre-emptor was offered for filing. The defendant claimed that the line of the railroad had not been definitely fixed, and hence the land had not been withdrawn from sale at the time the declaratory statement was filed. The only evidence of such withdrawal was a letter from the commissioner of the general landoffice addressed to the local land officers withdrawing the land from sale and pre-emption. In the opinion it is said: "The act being within the scope of the commissioner's powers as a subordinate officer, it will be assumed that the withdrawal was made by the direc-

tion of the secretary of the interior, and the withdrawal is itself a recognition of the fact that the map was filed in the office of the secretary. We must presume that the proper evidence was before him on which to base his official action."

If it be conceded in this case that the offering to file the declaratory statement was equivalent to filing, it certainly would have to be alleged that the declaratory statement complied with the law and that the necessary fees were tendered.

In the case of *Southern Pac. R. R. Co. v. Purcell*, 77 Cal. 70, the defendant contended that the lands in controversy were excepted from the grant, and made proof of his qualifications as a homestead claimant, residence, and compliance with the law at the time and prior to the time the line of the road was definitely fixed, that he went to the landoffice and asked the register to be allowed to file a homestead entry for the land, but the offer was rejected. The court in the opinion says: "This did not bring him within the exception. Nothing is said about his paying or offering to pay the register's fees, or about his making or tendering the necessary affidavit. It may be that the register refused to allow his entry because these conditions were not fulfilled. If such was not the fact, the defendant should have proved it, as the burden in this regard was clearly upon him. So far as is shown, he appears not to have taken any further step. He did not show that a homestead claim had attached to the land, and therefore did not bring himself within the terms of the exception. So far as is shown by the record, he was a mere occupant of the land. And it is well settled that mere occupancy of public land does not, of itself, give the occupant any right to the land, or prevent the government from disposing of it as it pleases."

It appears from the complaint that Shay moved off the land during the year 1867, and it does not appear that he ever appealed from the order of the register rejecting his filing, or that he has ever since claimed the land. It further appears that in 1885 the defendant applied to plaintiff to purchase the land and was by plaintiff let into possession as its tenant under a contract to purchase. That after occupying the land for some six years under said contract with plaintiff, the plaintiff, at defendant's request, transferred the contract and right to pur-

chase to his wife, Julia McCann, and defendant let his said wife into the possession of the land as the tenant of plaintiff. Afterward, the defendant re-entered the land and ousted the plaintiff and its said tenant Julia McCann from the same, and has ever since wrongfully held possession of the same.

We advise that the judgment be reversed, with directions to the court below to overrule the demurrer to the complaint and allow the defendant a reasonable time to answer.

Chipman, C., and Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment is reversed, with directions to the court below to overrule the demurrer to the complaint and allow the defendant a reasonable time to answer.     McFarland, J., Temple, J., Henshaw, J.