# WHEELING.

## LUMBER COMPANY v. WARD.

*(Absent, SNYDER, JUDGE.)

Submitted June 14, 1887.—Decided June 25, 1887.

1. CORPORATION—FORFEITURE OF CHARTER.

A cause of forfeiture can not be taken advantage of or enforced against a private corporation collaterally or incidentally or in any other manner than by direct proceeding for that purpose against the corporation, so that it may have an opportunity to answer. And the State can alone institute such a proceeding, since it may waive a broken condition of a compact with it, as well as an individual can. (p. 49.)

2. CORPORATIONS—FORFEITURE OF CHARTER.

This is as true, when the cause of forfeiture is the non-payment of a license-tax to the State, as it is of any other cause of forfeiture, the law in this respect not having been altered by section 8 of chapter 20 of the Acts of 1885. (p. 50.)

3. CORPORATIONS—FORFEITURE OF CHARTER.

At common-law, when a corporation ceased to exist by expiration of its charter or by its dissolution by a forfeiture of its charter, thus judicially ascertained and declared, or in any other manner, all suits for or against it abated. But this is not now the law in this State, the common-law on this subject having been repealed by section 59 of chapter 53 of the Code. In this State a suit by or against a private corporation can not be abated or dismissed because the corporation has been dissolved by a forfeiture of its charter, so judicially ascertained or declared, or by its dissolution in any other manner. (p. 54.)

Statement of the case by GREEN, JUDGE:

This was an action of assumpsit brought in the county of Roane by a corporation, the Greenbrier Lumber Company,

* One of the parties to this suit.

against James T. Ward and P. G. Cunningham, late partners doing business under the name of Ward & Cunningham. The declaration was filed at February rules, 1884, and contained nothing but the common counts for goods sold by the plaintiff to the defendants at their request, for money lent by the plaintiff to the defendants at their request, for money paid by the plaintiff to the defendants at their request. for money had and received by the defendants for the use of the plaintiff, for money found to be due by the defendants to the plaintiff on an account stated between them, and was in the usual and proper form. A demurrer to the declaration was properly overruled on March 27, 1884; and the defendants then pleaded not guilty, and the issue was joined, and the case was continued for the defendants at their costs. At the next term, on August 28, 1884, the defendants filed a plea " that the plaintiff is not a corporation, as in the declaration is alleged, and was never at any time such corporation hitherto; and of this they put themselves upon the country." This plea was supported by a proper affidavit in due form. The plaintiff objected to the filing of the plea; but the objection was overruled, and the defendants offered specifications of accounts and sets-off, which were filed by leave of the court. The plaintiff replied generally to this plea; and issue was joined thereon. At the next term of the court the case was continued at plaintiff's costs, after the plaintiff by leave of the court had filed its bill of particulars. On March 30, 1885, the issue on the plea, that the plaintiff was not an incorporated company, neither desiring a jury, was tried by the court on the evidence; and the court on the issue found for the plaintiff, and judgment was rendered for the costs of the plaintiff in and about said plea expended except an attorney's fee against the defendants. The next day the case was continued at the defendants' costs. On March 31, 1886, the defendants suggested on the record the dissolution of the Greenbrier Lumber Company as a corporation; and on August 26, 1886, the following order was entered on the record in this case:

" This day came the said defendants, Ward & Cunningham, and suggested to the court here, that since the last term of this court, the charter of the said company has been wholly for-

feited to this State, and to support said suggestion and as proof of said forfeiture the said defendants now file in the papers of said cause the certificate of Henry S. Walker, the Secretary of State of the State of West Virginia, under the great seal of this State, bearing date on the 30th day of July, 1886, showing the forfeiture of the charter of said company for the non-payment of the license-tax, as provided for and prescribed by chapter 20 of the Acts of the Legislature of West Virginia for the year 1885.

"The said certificate is as follows, to-wit:—

"'STATE OF WEST VIRGINIA, }
Office of Secretary of State.}

"'I, Henry S. Walker, Secretary of State of the State of West Virginia, do hereby certify that, as appears from the records of my said office, the Greenbrier Lumber Company, a corporation created and organized under the laws of West Virginia, has forfeited its charter to the State, in accordance with the provisions of sec. 8 of chapter 20, Acts of the Legisture of 1885, by the non-payment, on or before the first day of May, 1886, of the license tax imposed by the section and chapter aforesaid. And I do further certify that due publication of such forfeiture has been made by the Auditor as required by law.

"'Given under my hand and the great seal of the said State at the city of Charleston, this 30th day of July, 1886.

[SEAL.]                    "'HENRY S. WALKER,
                           "'Secretary of State.'"

On August 30th, 1886, this order was made:—

"This day came the parties, by their attorneys, and thereupon the defendants claimed that the plaintiff could not maintain this suit because of the forfeiture suggested in this case, and of the evidence of such forfeiture filed in the papers of this suit, and moved the court to dismiss the plaintiff's action, because of such forfeiture, and the plaintiff resisted said motion, and the matters of law arising thereon being argued and considered by the court, said motion is overruled, the court being of opinion that said forfeiture does not prevent the plaintiff from prosecuting its suit to judgment and final termination."

A plea in writing was tendered on November 26, 1886, and an order of the court made reciting, that it had been tendered at the August term preceding and objected to by the plaintiff. This order was a *nunc pro tunc* order, the clerk having failed to enter it as of the August term preceding, though it was then ordered by the court. This plea is as follows:

" And now, at this term, to-wit: On the 27th day of August, 1886, came the said defendants, by their attorneys, and say, that the said plaintiff ought not to further maintain its said action against the said defendants, because they say that after the said supposed causes of action in the said declaration mentioned accrued to the said plaintiff, and after the last continuance of the plea aforesaid, that is to say, after the —— day of March, 1886, on which day the said action was continued until the present August term, 1886, of said court, which term is now being holden, to-wit, before this day, the said plaintiff wholly forfeited its charter as such company to the State of West Virginia, because on account of its failure to pay the annual license-tax to the Auditor of said State on or before the first day of May, 1886, as said corporation was required to do by section 8 of chapter 20 of the ' Acts of the Legislature of West Virginia,' passed on the 26th day of February, 1885, and approved on the 27th day of February, 1885, which forfeiture of said charter was duly published by said Auditor as required by law, as will fully appear by the certificate of Henry S. Walker, Secretary of State of the State of West Virginia, under the great seal of the State, and bearing date on the 30th day of July, 1886, and which the said defendants now bring here into court, the date whereof is the day and year last aforesaid. And so it is, the said defendants allege and charge, that the said charter of the said corporation was and is wholly forfeited to the State of West Virginia, and that thereby the said corporation was and is wholly dissolved and ceased to exist. And this the said defendants are ready to verify, wherefore they, the said defendants, pray judgment if the said plaintiff ought further to have or maintain its aforesaid action thereof against them, &c."

This plea was supported by affidavit. On November 26,

1886, the following final judgment was entered by the court:

" This day came again as well the said plaintiff, by its attorney, as the defendants, by their attorneys, and the matters of law arising on the objection by the plaintiff to the filing of the plea in writing of the said defendants, heretofore tendered, being fully argued by counsel and maturely considered by the court, it is the opinion of the court, that said objection to said plea is not well taken; it is therefore considered by the court, that said objection to the said plea and to the filing thereof be, and the same is, hereby disallowed and overruled, and on motion of the said defendants the said plea is now filed; to the overruling of the said objection to the said plea by the court, and to the filing of said plea, the said plaintiff, by its said attorneys, excepts; and the said plaintiff now replies generally to the said plea, and issue is thereon joined, and neither party requiring a jury to try said issue, the court is substituted in lieu of a jury to hear the evidence and try the issue joined on said plea as aforesaid, and having heard all the evidence adduced and the arguments of counsel therein, and maturely considered the same, the court doth find for the defendants upon the said issue joined. It is therefore further considered by the court, that the said plaintiff take nothing as against said defendants by its said action; that said suit be and the same is hereby dismissed, and that the defendants do recover from the plaintiff their costs by them in and about their defense in this behalf expended."

And thereupon the plaintiff, by its attorney, moved the court to set aside the foregoing judgment and grant it a new trial of said cause, which motion being fully argued by the counsel and considered by the court, the said motion is by the court overruled and disallowed. To the ruling of the court overruling said motion and to set aside said judgment and refusing to grant it a new trial, the plaintiff excepts and tenders its bill of exceptions, which is signed and sealed by the court and made a part of the record in this cause. From this judgment the plaintiff obtained a writ of error from this Court January 14, 1887.

*A. F. Mathews* for plaintiff in error.

*R. S.* and *C. L. Brown* for defendants in error.

GREEN, JUDGE:

The declaration in this case was in *assumpsit;* and it contained only the common counts and was in proper form. It was nevertheless demurred to by the defendants. The only ground, which I can imagine, for a demurrer is, that the plaintiff in the declaration was a corporation. At one time there was an idea, that a corporation could only contract under its seal; but this has long since ceased to be law; and a private corporation may now contract and be contracted with by simple contract everywhere; and this is provided expressly in section 1 of chapter 52 of the Code; and power is further thereby given to corporations to ·sue and be sued. These powers a corporation would now evidently have without any such express provision. The demurrer to the declaration was therefore properly overruled by the court below. The defendants pleaded *non assumpsit;* and issue was joined. Under this plea the plaintiff under the common-law would have had to prove, that it was a corporation. *Reese* v. *Bank*, 5 Rand. 326; *Taylor* v. *Bank*, 5 Leigh 471. But this has been changed by statute-law in this State. Acts of 1882 chapter 71, amending chapter 125 of Code, section 41. A corporation suing in this State need not prove its existence, unless it be denied by a special plea verified in a certain way. Such a plea so verified was filed in this case, issue joined, tried and decided in favor of the plaintiff on March 30, 1885. Subsequently the defendants on August 24, 1886, suggested to the court, that since the last term of the court the charter of the plaintiff had been forfeited to the State, and to prove it they produced the certificate of Henry S. Walker, Secretary of State, under the great seal of the State dated July 30, 1886, and certifying, that the plaintiff had forfeited its charter to the State in accordance with the provisions of section 8 of chapter 20 of the Acts of 1885 by the non-payment on or before the 1st day of May 1886, of its license-tax imposed by said act, of which due publication had been made. This was subsequently proposed to be formally pleaded and the plea verified; and the filing of such plea was objected to by the plaintiff; but his objection

was overruled, and the plea allowed to be filed, and the plaintiff excepted to this ruling of the court. The plaintiff replied to this plea, and issue was joined thereon; and neither party requiring a jury, the court tried the issue on November 27, 1886, and found on this issue for the defendants and entered up a judgment dismissing the plaintiff's action and adjudging, that it pay defendants their costs; and the plaintiff moved the court to set aside the judgment and grant it a new trial, which the court refused to do, and the plaintiff excepted. It also excepted during the progress of the trial to the court's allowing the introduction as evidence in support of the plea of this certificate of the Secretary of State by the defendants against the objection of the plaintiff.

These proceedings raise in several different ways the question whether this supposed forfeiture of its charter by the plaintiff for the non-payment promptly of its annual tax proven by the certificate of the Secretary of State under the great seal and of the publication by the Auditor thereof could be set up in any manner as a defence to the plaintiff's suit, and had the effect of abating it and justified the dismissing of the plaintiff's action. This section 8 of chapter 20 of Acts of 1885, which, it is claimed, justifies such dismissal is in these words, so far as it bears on this question :

" The State taxes shall be as follows : Upon every corporation, whose principal place of business or chief works are located inside of this State, there shall be an annual license-tax of ten dollars to be paid on or before the first day of May of each year to the Auditor and by him turned into the general treasury; and any such corporation, which shall fail to pay this tax, shall because of such failure forfeit its charter to the State. It shall be the duty of the Auditor on or before the first day of March in each year to notify every corporation liable to a tax hereunder of the time of the payment of such tax. Such notice shall contain the words of this act " (so far as I have copied them).

It may be regarded as perfectly well established law that "A cause of forfeiture can not be taken advantage of or enforced against a corporation collaterally or incidentally or in any other mode than by a direct proceeding for that purpose against the corporation, so that it may have an opportunity

to answer. And the government creating the corporation can alone institute such proceeding, since it may waive a broken condition of a contract made with it, as well as an individual." This is the law as laid down by Angel and Ames on Corporations, section 777, 10th ed. This proposition of law they sustain by the citation of fifty-six authorities, English and American, the American authorities cited being from many of the States of the Union widely scattered; and as I have never seen any decision, which is opposed to the law, I think I may safely say, that it is universally recognized as law. I do not regard it therefore necessary to refer to these numerous authorities.

Judge Green, in *Banks* v. *Poitiaux*, 3 Rand. 142, says on this subject: "It would be extremely inconvenient if every contractor with one of these banks could for the purpose of avoiding his contract institute the inquiry, whether the bank had violated its charter. They have a right to insist, that the question should be tried by a jury in a proceeding having that single object in view." In *Crump* v. *U. S. Mining Co.*, 7 Gratt., it was held, as stated in the 1st pt. of the syll.: "In an action by a corporation the question, whether the corporation has forfeited its charter, is not open to inquiry, unless the forfeiture has been ascertained by the sentence of a court in a proper proceeding for the purpose." That case was decided in 1851, and as this principle is in entire accord with all the authorities, and is as binding an authority on us, as if pronounced by our own Court, having been rendered before the formation of this State, we have no disposition to question it or to re-examine the point of law so decided.

This case has not been argued by the counsel for the plaintiff in error; and the counsel for the defendants in error, while not expressly admitting the law to be as I have stated it, do not in their argument controvert it, but rather seem to admit its correctness, when they say : "In this State the publication of the forfeiture of the charter by the Auditor for the non-payment of the tax, and the proclamation of that fact under the great seal by the Secretary of State, supplies the place of the common-law *scire facias* or *quo warranto* or other judicial proceeding and *ipso facto* terminates the existence of such corporation." This assumption is, it seems to

me, groundless. It strikes me as very questionable, whether the Legislature has the constitutional right to deprive a corporation of all right to be heard, before such a judgment was pronounced, whereby it would not only be deprived of its franchises but of all its rights of property, including its right to sue to collect its debts, according to the views of the counsel for the defendants in error. For this is the effect, they insist, of the proclamation of the fact that its tax was not paid, made by the Secretary of State; and according to their view all its lands reverted upon the making of this proclamation to the grantors, all its personal property was vested in the State immediately, and all the debts due to or from the corporation were extinguished, and all suits pending for or against it abated. To sustain these as the consequences of such proclaimed forfeiture, counsel for the defendants in error rely upon Judge Tucker's opinion in *Rider* v. *Union Factory*, 7 Leigh 154. But it should be observed, that because of these injurious and unjust consequences, which by the common-law followed from the determination of a charter of a corporation, Judge Tucker in that case says on page 156: " It appears to me peculiarly desirable, that the Legislature should provide in detail, what should be the effect of an expiration or determination of their charters." This has been done by the Legislature in chapter 53 section 59 of our Code.

But counsel for the defendants insist, that this section has no application, when the charter of a corporation is *forfeited*, and that in such cases the common-law rule still prevails; and its lands revert to the grantors, and all the debts due to or from it are extinguished, and all suits for or against it abate, and all its personal estate passes to the State. But as a preventive in some degree to these pernicious effects the common-law provided, that though a corporation did some act, by which its charter was forfeited, the State, if it believed the pernicious consequences to the community would be greater than the beneficial effects of putting an end to the corporation, might, as it often did, decline to proceed by *quo warranto* or other judicial proceedings against the corporation, and thus obtain a judicial sentence, that its charter had been forfeited; and unless this was done, none of these pernicious consequences would follow. And unless

the Legislature has by statute clearly surrendered this discretion on the part of the State, the courts would be very reluctant to construe the language of a statute as surrendering on the part of the State such discretion so wisely conferred on it by the common-law and in every case subjecting the community to these gross wrongs for no better reason than, that a corporation had failed, it might be by carelessness, accident or mistake, to pay its license-tax by a given day.

We have seen, that this section 8 of chapter 20 of the Acts of 1885, provided, that, if this annual license-tax of ten dollars was not paid on or before the 1st day of May, the corporation because of the failure should forfeit its charter to the State. If the section had said no more, it would be clear, that this would have been merely a cause of forfeiture, and that the State could still as always before exercise its discretion by *quo warranto* or other judicial proceeding against the corporation to have this forfeiture pronounced by a court; or, if it thought, that such a determination of the charter of such corporation, as in many cases it might be, in a high degree prejudicial to the community, it might decline to issue such writ of *quo warranto* or in any other manner proceed to obtain such judicial sentence of a forfeiture of its charter. But it is claimed, that there is another portion of this section, which shows, that in such cases the Legislature intended to surrender on the part of the State this discretion so essential to the protection in many cases of the community against the gross wrongs, which would follow a determination of the charter of such corporation and in lieu of this judicial sentence of a court, which could never be pronounced except at the instance of the State in the particular case, the Legislature substituted a mere publication by the Secretary of the State, which should always be made as a ministerial duty, whenever a corporation failed to pay its license-tax promptly on or before the 1st day of May in any year.

I do not think, that the Legislature so intended, or that the language it used has such a meaning. The language is as follows: "It shall be the duty of the Auditor within thirty days after the 1st of May to publish in two newspapers of general circulation, one of which must be

published at the seat of government, and the other in the city of Wheeling, a list of such corporations, as have for- feited their charters under this. provision of this section within the preceding year." It does seem to me, that to so interpret this language as to hold, that this publication by the Secretary of the State, a mere ministerial act, in the do- ing of which he could exercise no discretion, was intended as a substitution for the sentence of a court, that the charter of a corporation had been forfeited, which sentence could never be pronounced, if the State deemed it injudicious to ask for it by *quo warranto* or otherwise against the cor- poration, and not then till it had an opportunity to be heard, and its failure to pay its tax at the proper time had been established, such an interpretation of the act would make its constitutionality very questionable. The purposes of the Legislature in this provision were, it seems to me, far different. Its object apparently was to promote the prompt payment of the license-tax of corporations by mak- ing known to the stockholders and all others interested in the corporation, that its officers had neglected or failed to pay the taxes of the corporation, and thereby had put the corporation in the power of the State by instituting legal proceedings to have the corporation destroyed by having a court to pronounce a sentence, that its charter was forfeited ; and secondly, by the publication the community generally would be warned to be cautious, how they had business transactions with a corporation, which by failure to pay its taxes had subjected itself at any time, if the State chose, to have a sentence passed by the courts, that its charter was forfeited. These evil consequences to corporations would hold out a strong inducement to them to pay their taxes promptly. This I presume was the object of this pro- vision.

When so just and so reasonable an interpretation can be given to the language used by the Legislature, it would be highly improper to so construe the language used as to make the act in many cases work the greatest wrong to the community, as we have seen, if the defendants' counsel be right in their interpretation, it must in many cases do. For it would according to their notion extinguish all debts

due from the corporation. But so far from such reckless legislation our Legislature, as I understand its acts, has provided, that no debt due either from a corporation or to a corporation shall ever be extinguished even by a judicial sentence of a forfeiture of its charter. The 59th section of chapter 53 of the Code provides among other things : "When a corporation shall expire or be dissolved, suits may be brought, continued or defended in the corporate name in like manner and with like effect as before such dissolution or expiration." Counsel for defendants in error argue, that this section has no application to a dissolution of a corporation by a forfeiture of its charter, though judicially ascertained and declared, but applies only to the dissolution spoken of in sections preceding, that is, to voluntary dissolutions and to dissolutions by a court of equity on the application of a portion of the stockholders. But they assign no reason for thus restricting the language of this section. According to Angel and Ames in their work on corporations, to use their own language, in section 774: " A corporation may also be dissolved by a forfeiture of its charter judicially ascertained and declared." Why should we say, that the section of our Code above quoted does not apply as well to this kind of a dissolution of a corporation as to any other. The mischiefs arising from the dissolution of a corporation were the same, whatever was the nature of the dissolution. In any case it extinguished all debts due from or to the corporation and abated all suits for or against it. The above portions of the section were designed to correct this gross injustice and wrong, which resulted from the dissolution of a corporation in any manner. And it is obvious it was intended to correct this evil and applied just as much to a dissolution of a corporation by a forfeiture of its charter judicially ascertained and declared as to any other sort of dissolution. No suit therefore can now in this State ever abate, because the plaintiff, a corporation, has ceased to exist by a dissolution thereof by a forfeiture of its charter or in any other manner.

In the case before us the Greenbrier Lumber Company has never been dissolved, as a forfeiture of its charter has never been judically ascertained and declared in a proceed-

ing for that purpose by the State. But had it been, its suit could not have been abated or dismissed because of this 59th section of chapter 53 of the Code, though it might have been by the common-law but for this section.

For these reasons the judgment of the Circuit Court of Roane county of the 27th of November, 1886, must be set aside, reversed and annulled; and the plaintiff in error must recover of the defendants in error his costs in this Court expended; and this Court must enter such a judgment, as the court below should have entered. The objection to said plea in writing tendered by the defendant is sustained; and said plea is rejected; and the suggestion of the matter contained in said plea, made on August 26, 1886, and then entered of record, must be disregarded as wholly immaterial and presenting no cause for the abatement of this suit; and this case must be remanded to the Circuit Court of Roane county to be further proceeded with according to the principles governing courts of law.

REVERSED. REMANDED.