# CHARLESTON.

HORNBROOK, *et al. v.* TOWN OF ELM GROVE, *et al.*

Submitted January 24, 1895—Decided April 13, 1895.

1. MUNICIPAL CORPORATION—FORFEITURE OF CHARTER,
   A forfeiture of the charter of a municipal corporation can not be enforced or taken advantage of in any legal proceeding collaterally or incidentally. That forfeiture must be declared in a proper, direct way. The state only can enforce such forfeiture, as it alone has the right to waive or enforce it.

2. MUNICIPAL CORPORATIONS—FORFEITURE OF CHARTER.
   The forfeiture of charters of towns for the causes defined in Code, c. 47, s. 44, must be governed by the principles above stated. Quaere, can such forfeiture be declared by any judicial proceeding?

3. MUNICIPAL CORPORATIONS—PARTIES TO SUITS.
   A suit to enjoin the collection of municipal taxes, on the ground that they were illegally imposed by reason of want of authority to impose them from forfeiture of the municipal charter, is not wrongly brought, from the mere fact that the town is sued in its corporate name. So bringing the suit does not admit its continued existence.

ERSKINE & ALLISON and W. P. HUBBARD for appellants, cited Code 1868, c. 47; Const. Art. VI, § 39; Code, 1891, c. 47, s. 44; 30 W. Va. 43; 32 W. Va. 98; 102 U. S. 511; 1 Black, Pub. Corp. § 63, 425, note; 63 Tex. 520; 38 Kans. 744; 1 Dill. Mun. Corp. § 112; 2 Dill. Mun. Corp. § 896; 1 Black, Pub. Corp. § 118, 119; 11 Gratt. 572; 78 N. Y. 524; 72 N. Y. 245; 75 N. Y. 335; 86 N. Y. 69; 73 N. Y. 389; 61 Me. 160; 36 Conn. 196; 101 Pa. St. 391; 73 Tex. 624; 34 Ill. 320; 107 N. Y. 159, 170; 45 Cal. 385; 3 Cranch. 338; 62 Cal. 251, 257; 6 Mich. 447, 455; 10 Mich. 125, 134, 135; 93 U. S. 258; 10 Tex. 137; 41

Mich. 647; 15 Mich. 403; 5 Mich. 114; 6 Mich. 447; 10 Mich. 125; 13 So. Rep. 251; 23 W. Va. 667; 38 W. Va. 122; Id. 219.

HENRY M. RUSSELL for appellees, cited 39 W. Va. 142; 129 Ill. 169; 37 W. Va. 520; 24 Am. & Eng. Enc. Law 33; 32 W. Va. 6; Code 1868, c. 47, s. 44; 31 W. Va. 384, 389; 123 Ind. 540; 32 Pac. Rep. 66; Acts 1890, pp. 141, 142, 164; 30 W. Va. 43; 118 U. S. 444; Cooley's Const. Lim. 309, 310; Am. & Eng. Enc. Law, 964; Dill. Munn. Corp., § 720, note; 61 Ill. 397; 1 Beach, Pub. Corp. § 55; 22 S. W. Rep. 888; 15 Mich. 463; 3 W. Va. 319; 30 W. Va. 282; 66 Cal. 288; 29 Iowa 264; 113 Ill. 491; 30 W. Va. 430; 100 U. S. 525; Const. Art. VI, s. 39; 43 N. J. L. 542; 78 Ky. 140; Code, c. 109.

BRANNON, JUDGE:

Henry H. Hornbrook and others, for themselves and all other tax-payers of the town of Elm Grove, filed a bill in equity in the Circuit Court of Ohio county against that town and its officers, praying that the collection of taxes imposed on them by the town might be enjoined, and an injunction which was granted was afterwards dissolved, and the plaintiffs appeal.

The single ground on which the counsel for the plaintiffs in this Court seek to rest their case is that the town has for more than one year failed to keep its streets, alleys, walks and gutters in good repair, and has thereby forfeited its charter, and become extinct, and therefore has no power to impose taxes. This position rests on section 44, chapter 47, Code, reading: "Any city, town or village which shall fail for one year to keep its roads, streets, alleys, sidewalks and gutters in good order and repair, or which shall fail for one year to exercise its corporate powers and privileges, shall thereby forfeit its charter, and all the rights, powers and privileges conferred thereby."

It will be seen at once that this suit is not one having for its purpose to ascertain and declare the fact working the forfeiture of the town's charter, but that it seeks to do this collaterally, and thus make the forfeiture effectual, without any direct judicial declaration of the forfeiture. It is said

the very letter of the Code above quoted says that, because of certain defaults, the town shall "thereby forfeit its charter" *ipso facto;* that if that default be found, no matter about the form of proceeding, it paralyzes the acts of the town. It is true that that omission is made by the Code a cause of forfeiture; but is that to be inquired into, and, if found, to be enforced, in a purely collateral proceeding? Or must there be some judicial inquiry in a proceeding proper to ascertain and declare the cause of forfeiture? Must there not be a direct judgment of death upon the municipal corporation? The general rule is well established that the corporate existence of a municipal corporation can not be questioned collaterally. Beach, Pub. Corp. § 55; Cooley, Const. Lim. 254; 15 Am. & Eng. Enc. Law 964; 2 Kent, Comm. 312. "An incorporated town retains its corporate capacity until its charter is declared forfeited in a direct judicial proceeding. It can not be held, in any collateral proceeding, to have forfeited its charter by *non-user.*" *Harris* v. *Nesbit,* 24 Ala. 398.

In an action by a town to collect taxes, it was held that the legal existence of the corporation could not be tested in such action. *Town of Geneva* v. *Cole,* 61 Ill. 397. Of course, this rule will apply whether the existence of the town depends on the invalidity of its charter in the start or subsequent forfeiture. Suppose this were not the rule. Chaos would reign. Whenever the town would proceed to punish one for any offense against its order and peace, or enforce its taxes, or sue to enforce its rights, or take any step under color of its charter, there must be an investigation before every court, high or low, as to whether it had kept its streets, alleys, walks and gutters in order, and minute inquiries would be made into the sufficiency of their order, and in some instances the mayor or alderman, if he thought the streets were not in proper order, would have to abdicate his seat, because of the forfeiture of the town's life. Where would be the end of the confusion? What towns would it afflict? What towns would it not afflict? Is it possible that our legislature has changed this salutary rule by the section of the Code quoted? We are under that principle,

unless by reason of it. And what is there peculiar in it—
so peculiar as to revolutionize the rule in West Virginia?
It merely declares that for *non-user* and *misuser* the town
shall forfeit its charter. The words "thereby forfeit" in
the statute are not unusual in such cases where the pur-
pose is to declare a certain fact a cause of forfeiture, fine,
or other legal result. It means only that "by reason of"
or "because of" such and such facts the charter shall be for-
feited. It is only equivalent to the word "because," in the
language, "shall because of such failure forfeit its charter
to the state." *Lumber Co.* v. *Ward,* 30 W. Va. 43 ( 3 S. E.
Rep. 227). It states the cause of forfeiture, and states that
such cause shall of itself work a forfeiture. But why not in
this as well as in other instances apply the rule that there
must be a direct proceeding to ascertain and adjudge that
fact? There is no reason why this instance is out of the
general rule, and every reason why it is within it. We must
have a clearer expression than is here found of a legisla-
tive purpose to specify a cause of forfeiture, and dispense
with direct judicial inquiry as to the existence of that fact,
and an affirmative judgment of the forfeiture of the charter.

We are referred to our statutes forfeiting lands for omis-
sion of assessment or non-payment of taxes as instances of
forfeiture by statute, *proprio vigore,* without judicial sen-
tence; but that legislation was declared by the court in *Le-
vasser* v. *Washburn,* 11 Gratt. 572, as having a certain public
policy "to remedy certain evils for which prompt, summary,
and decisive measures were indispensable," as stated in that
case. That legislation specified the cause of forfeiture, de-
clared that cause should forfeit the land, and gave the land
at once by legislative grant to certain persons, thus evinc-
ing an intent to dispense with any inquest upon the facts
producing forfeiture. That decision depended on that par-
ticular legislation, which to answer a certain public policy,
plainly evinced, for reasons stated in that case, a design to
at once forfeit the titles of certain persons, and at once give
them to others. No such policy or necessity here exists.
There is no analogy of force between legislation to forfeit
lands of private individuals for neglect of public duty and

legislation forfeiting the very existence and cutting short the functions of public corporations constituting a part of the machinery of governmental administration.

Even as to private corporations, our rule is, as it is everywhere, that there must be direct judicial adjudication of the fact causing the forfeiture and of that forfeiture, and I think the reasons for requiring it in the case of towns are tenfold stronger than in cases of private corporations. In *Baltimore & O. R. Co.* v. *Supervisors, etc., of Marshall Co.,* 3 W. Va. 323, the Court declared the principle that a forfeiture of a corporate charter must be judicially declared before its forfeiture could be recognized in any court,. The charter act provided that if the road should not be completed by a certain date "then this act shall be null and void;" thus abrogating the very act giving corporate life—a stronger case for forfeiture without judicial sentence than this. Could there be a stronger? The court said the question of forfeiture could not be raised except by a proceeding in the name of the state against the company to declare and determine judicially the forfeiture and annul the charter. As regards the language of the act, that was as strong an instance of legislative intent to at once forfeit as this, if not stronger. So in *Lumber Co.* v. *Ward,* 30 W. Va. 43 (3 S. E. Rep. 227) it was held that "a cause of forfeiture can not be taken advantage of or enforced against a private corporation collaterally or incidentally, or in any other manner than by direct proceeding for that purpose against the corporation, so that it may have an opportunity to answer; and the state can alone institute such a proceeding, since it may waive a broken condition of a compact with it as well as an individual can."

But it is said that the reason of such decisions, as to private corporations, is that they are contracts with the state, and can only be forfeited by due process of law, by judicial hearing, as mere laws can not impair the obligation of contracts. I fail to be impressed that this draws a substantial difference. In both cases the state created or granted the franchise. It is with it to enforce or condone the forfeiture as much in the one as in the other case, contract or

no contract.  Indeed, it is more necessary to vest this right of enforcement or condonation of the forfeiture in the state in case of a town than in case of private corporations, because a town is a part of the government, delegated as the agent of the state to administer government in its stead in a given locality and in certain respects; and, the powers of government being vested in the state, it ought to be left to it to say whether the interests of the people to be affected will be better promoted by the abolition or continuance of the municipal charter.  If the idea is that the power to end the charter being with the legislature, it has in advance provided that in a certain event it shall *ipso facto* instantly cease, it is plain that the theory of contract is not an element of this proposition, and can not be used as a reason why we should dispense with the rule requiring a direct declaration of forfeiture.  As stated above, I do not think the words "thereby forfeited" amount to a legislative forfeiture in advance, without sentence.  The statute merely specifies a cause of forfeiture, leaving its ascertainment to be governed by the general law on the subject.

The case of *Oakland R. Co.* v. *Oakland B. & F. V. R. Co.*, 45 Cal. 365, is especially called to our attention.  It was an injunction to restrain a company from building a railroad bebecause the charter limited its construction to certain time, and provided, in case of failure, the franchise should "utterly cease and be forfeited," and it was held it was a forfeiture by the act without judicial declaration.  Variant decisions, as confusing as an Egyptian labyrinth, can be found in the vast number of decisions in different national and state courts in the endless series of reports.  We must select those most persuasive to us.  But we must follow our own reports.  Shall we leave the cases of *Baltimore & O. R. Co.* v. *Supervisors, etc., of Marshall Co.*, and *Lumber Co.* v. *Ward, supra*, and follow the California case?  *Upham* v. *Hosking*, 62 Cal. 250, followed the case just cited.  It was a franchise granted to individuals, not a corporation.  The remarks of Marshall, C. J., in *U. S.* v. *Grundy*, 3 Cranch 337, that where the forfeiture is by common-law nothing vests in the government until some legal step has been taken to assert the right,

but a statutory forfeiture is different, were made as to a statute declaring a vessel forfeited if a false oath were taken tó procure a register. It was a forfeiture by a private individual of private property, not like the government's solemn grant of incorporation for municipal purposes, or a private corporation. *Per contra* the California cases, I may cite the case of *Bank* v. *Dawson,* 13 La. 497. The statute enacted that if a bank suspend specie payment for more than ninety days, "the charter shall be *ipso facto* forfeited and void." Here was a much stronger statutory declaration of forfeiture than in this case. It was held that a cause of forfeiture can not be taken advantage of or enforced against a corporation incidentally, or in any ohter mode than by a direct proceeding instituted by the government, because it may waive a broken condition of a contract or charter, as well as an individual, and that it continued to exist as long as the state did not claim the forfeiture. I think this decision supported abundantly by authority almost universal.

But it is agreed that no proceeding in any court by *quo warranto* or other process lies to declare the forfeiture of a municipal corporation, and therefore the section of the Code declaring that for certain causes the charter shall be forfeited would be a dead letter and not enforceable, unless it may be enforced in a collateral way, such as is proposed in this suit. This is not a *quo warranto* or other such direct proceeding, and we are not called upon to decide whether *quo warranto* or other judicial process would lie, and it would be perhaps *obiter dictum* to decide it in this case.

Speaking for myself, I do not think *quo warranto* or any other judicial process lies to forfeit the charter of a municipal corporation, and this because it is a part of the government itself, and it lies only with the legislature to take away its charter. Think of a court declaring the charter of the city of New York forfeited. "Municipal corporations are mere instrumentalities of the state for the more convenient administration of local government. Their powers are such as the legislature may confer, and these may be enlarged,

abridged or entirely withdrawn at its pleasure. This is common learning, found in all adjudications on the subject of municipal bodies, and repeated by text writers. There is no contract between the state and the public that the charter of a city shall not be at all times subject to legislative control." *Meriweather* v. *Garrett,* 102 U. S. 511. So has said this Court in *Probasco* v. *Moundsville,* 11 W. Va. 501, and *Board of Ed.* v. *Board of Ed.,* 30 W. Va. 424, 430 (4 S. E. Rep. 640); 1 Beach Pub. Corp. § 63.

Such a corporation being thus a part of the very government itself, its agent by it constituted to perform certain functions, even legislative functions, which belong exclusively to the legislature as a separate department of the government, if the judiciary can annul the charter, it invades the · domain of the lawmaking department by abolishing the agency, and its powers to administer government as directed by the legislature, in opposition to its will that such functions shall be adminstered by its own chosen agent. The very power to constitute the agent is here a legislative prerogative, and that power is nullified by a court, and the powers committed to that agent, confessedly pertaining to the legislature, can no longer be exercised as commanded and deemed wise by the legislature, and its powers are to that extent thwarted and crippled.

In England the power is exercised by *quo warranto* and *scire facius.* The charters of London and of the colonies of Massachusetts, Rhode Island and Connecticut were thus abrogated. Mr. Beach expresses the opinion, as also Judge Dillon, that the judiciary can not here exercise this power, since these corporations being purely public corporations, composed of citizens, formed only for local government by the legislative department, to give the judiciary the power of dissolution would make it co-ordinate with the legislative power in control of local government and local legislation, and the power over municipal corporations vested in the legislature is limited only by the constitution, and in it the legislature can have no rival, and neither the judiciary nor the

executive can create or destroy a municipality, which is but a subdivision of the state government. Dill. Mun. Corp. §§ 112, 168, 720, 896; Beach, Pub. Corp. §§ 118, 119. There are cases, however, holding that the power to declare a forfeiture exists in the courts. *People* v. *City of Riverside*, 66 Cal. 288 (5 Pac. 350); *State* v. *Independent School Dist.*, 29 Iowa 264; *Dodge* v. *People*, 113 Ill. 491 (1 N. E. Rep. 826.)

But grant that there is no judicial process directly to declare the forfeiture. Does that compel us to say that it can be enforced judicially in collateral proceedings? By no means; but the legitimate, logical conclusion therefrom would be that as there is no direct there can be no indirect process; that if you can not accomplish the result directly, you can not collaterally. It is enough for us to say that in the indirect way proposed in this suit, the power of taxation essential to the exercise of the powers of a town, and which is lawful unless the corporation is defunct, can not be denied. But there is a remedy, and in my judgment the only remedy, and that is with the legislature. It gave; it alone can take away. It is with it, as it ought to be, to say whether the public interest involved will be better promoted by looking over the *misuser* of the corporate powers, and trusting for better things from the present or another set of officers, or to blot out the municipality. The fact that our constitution in article VI, section 39, provides that the legislature shall not pass local or special laws incorporating cities, towns, or villages, or amending the charter of any city, town or village containing a population of less than two thousand, but it shall provide by general law for those cases, does not take away that power residing in that body to repeal or declare forfeited a charter of a town. The legislature can do anything not prohibited. The object of the provision was to prevent multitudinous special acts creating or amending municipal charters consuming the time of the legislature; but this limits only the power to create or amend charters, and it does not prohibit the repeal of a charter by special act, or anything trenching on the power of the legislature over municipal corporations existing. See *State* v. *Steen*, 43 N. J. Law 542.

Were this a proceeding directly assaulting the corporation, I should say private indviduals could not maintain it, but only the state. There would be more reason for confining this power to the state's election than in cases of private corporations. It ought not to lie with indviduals, from mere personal interest, caprice or impulse of prejudice, to make suggestions of *misuser*, and make the existence of towns the football of litigation. Cooley, Const. Lim. 254.

Counsel for appellees suggests that this suit is wrongly brought against the town, and should be only against its officers, and that in suing the town its continued existence is admitted. *People* v. *City of Spring Valley*, 129 Ill. 169 (21 N. E. Rep. 843) supports this contention. But reputable authorities cited in it say that there is a distinction between private and municipal corporations in this respect, and that an information against a municipal corporation by its corporate name, even where its corporate existence is challenged, is rightly brought, it is as a corporation *de facto,* though not *de jure    State* v. *Bradford,* 32 Vt. 50; *People* v. *City of Riverside,* 66 Cal. 288 (5 Pac. 350). In the latter case other California cases are cited justifying that rule. In *State* v. *Brown,* 31 N. J. Law 355, an action to have it adjudged that a corporation was never legally constituted, it was held that the proceeding must be one that will bring the corporation itself directly before the court. It occurs to me that even in a proceeding to directly test the existence of a corporation, it ought to be a party by its assumed corporate name, as its existence as such is the very thing to be tried—its right to live and act in that name—and that its lawful existence is not admitted simply by impleading it in that name, when the pleading denies it. If so, a suit like this to enjoin taxes assessed in the name of a corporation is more properly brought against it as a party, and it does not estop the plaintiff from contesting its validity, so far as this objection goes.

For reasons stated above, the decree is affirmed.