BUNN v. CITY OF LAREDO.    (No. 6233.)

(Court of Civil Appeals of Texas. San Antonio. June 4, 1919. Rehearing Denied June 26, 1919.)

1. CORPORATIONS ⟜404(2)—PROPERTY—CONVEYANCE BY PRESIDENT.

Conveyance of corporation's property by president owning three-fifths of the stock without authority from board of directors conveys a three-fifths interest in the property.

2. CORPORATIONS ⟜404(2) — CONVEYANCE OF PROPERTY—DEED BY PRESIDENT.

In trespass by city to try title to land claimed to have been conveyed to city by defendant corporation through its president owning three-fifths of the stock of the corporation, the deed from the corporation to the city by such president was admissible in evidence, even though deed was not authorized, since the deed conveyed at least three-fifths interest in the property; the president being owner of three-fifths of the corporate stock.

3. CORPORATIONS ⟜617(1) — FORFEITURE OF CHARTER—AUTHORITY TO ACT.

Ordinarily forfeiture of a charter by secretary of state for nonpayment of franchise takes all authority away from the corporation to act.

4. CORPORATIONS ⟜619 — FORFEITURE OF CHARTER—CONVEYANCE OF PROPERTY.

Ordinarily forfeiture of corporation's charter does not place the property of the corporation in the hands of one officer to act as trustee for creditors and stockholders with authority to sell lands, without authority of board of directors.

---

⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. CORPORATIONS** ☞619 — DISSOLUTION — TRUSTEES OF PROPERTY—CONVEYANCE.

Ordinarily dissolution of corporation places all the property in the hands of the president and directors as trustees for the benefit of directors and stockholders; it being necessary for directors to join president in conveyance of the corporation's real estate in view of Rev. St. 1895, art. 683.

**6. TRUSTS** ☞239—COTRUSTEES—AUTHORITY.

All trustees · must join in an act, or one must act for all, thus becoming the agent of the others.

**7. PLEADING** ☞8(3)—CONCLUSION OF LAW— FORFEITURE OF CHARTER.

Allegation that corporation's charter and right to do business were forfeited for nonpayment of franchise tax *held* a conclusion of law.

**8. CORPORATIONS** ☞608 — NONPAYMENT OF FRANCHISE TAX—FORFEITURE OF CHARTER.

Under Rev. St. 1895, arts. 5243i, 5243j, corporation's failure to pay franchise tax does not bring about a forfeiture of its charter, but merely *established a ground for forfeiture which could only be taken advantage of by the state* and used as a basis for a judicial forfeiture.

**9. CORPORATIONS** ☞426(7)—CONVEYANCE BY PRESIDENT—RATIFICATION — ACQUIESCENCE.

Directors of corporation, by acquiescence in conveyance of property of the corporation through the president without authority from the board as a body, ratified the conveyance.

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Suit by the City of Laredo against T. A. Bunn. Judgment for plaintiff, and defendant appeals. Affirmed.

T. C. Mann, of Laredo, for appellant.
A. Winslow, of Laredo, for appellee.

MOURSUND, J. The city of Laredo sued appellant in trespass to try title to recover blocks 218, 219, 220, 221, 1206, and 1223 in the Eastern division of the city of Laredo. In addition to the usual allegations the city alleged that it had been for more than 33 years next preceding the alleged date of eviction in the open, notorious, adverse, and visible possession of said blocks of land, and since November 24, 1896, such claim had been asserted under a deed, duly registered. The city also pleaded its title specially.

The defendant answered by a general denial and a plea of not guilty, but afterwards filed an instrument containing admissions of the truth of most of plaintiff's allegations with respect to the title pleaded. Judgment was rendered in favor of the city.

On June 15, 1888, the city of Laredo passed an ordinance for the sale of its unsold lands within its corporate limits, authorizing such sales to be made on long time, retaining a vendor's lien to secure the payment of the purchase money, and further stipulating that the notes should provide that, in default of the payment of any interest due thereon, the purchaser should forfeit all rights to the land, and, in the event of such default, the city secretary should indorse on the notes "Land forfeited," and make an entry to that effect on the account of sales kept by him, and thereupon the lands shall be forfeited to the city without the necessity of re-entry or judicial ascertainment. Under such ordinance blocks 1206 and 1233 were sold to the Laredo Real Estate & Abstract Company, a corporation organized under the laws of Texas, and the other blocks to Henry Fisher, such sales being made upon 20 years' time, except as to 10 per cent. paid cash, a vendor's lien being retained in each instance, and the forfeiture provision inserted in the note as provided by ordinance. Fisher conveyed the four blocks to the Laredo Real Estate & Abstract Company, and as part consideration said company assumed the payment of the purchase-money notes due the city. At the same time Fisher conveyed many other blocks to said corporation upon the same terms. The corporation failed to pay the franchise tax due by it for the year ending April 30, 1895. It was insolvent. W. R. Pace was its president at the time of such failure to pay franchise tax, and J. P. Flynn, J. F. Flynn, A. W. Gifford, J. D. Wilson, and said W. R. Pace were the directors. All of these men, except Pace, shortly after that time, left the country, and have ever since remained away. No receiver was appointed for said corporation. The corporation was indebted to the city in the sum of $13,394.70 at the time of such failure to pay franchise tax on notes given for purchase money of 112 blocks of land in the Eastern division of the city, included in said amount being the sum due for the blocks sued for herein. On November 24, 1896, a deed was executed to the city, purporting to be the deed of said corporation, by said Pace as its president, conveying to the city said 112 blocks of land in consideration of the surrender and cancellation of the purchase-money notes due thereon. Pace owned three-fifths of the stock which had been issued by the corporation. He testified that the other directors respectively owed the company more than they had paid in; that he was elected president prior to the time the charter was forfeited; that the other directors would not come back, and had authorized him to do whatever was necessary to be done when they elected him president, and to adjust and settle the matter in any possible way; that none of the stockholders ever made any objection to the deed, and if they expressed anything at all it was their delight concerning the way he had managed the business. He also testified that he was the only stockholder not indebted to the company "any more than they have

paid." The defendant introduced in evidence several conveyances, reciting a nominal consideration, in some of which the interest of the grantors in the Laredo Real Estate & Abstract Company was conveyed to him, and in others such interest as the grantors had in lots and blocks in Laredo individually or as a stockholder in said company. These were all made directly to defendant in 1915, 1916, and 1917, except in one instance. Henry Fisher made a conveyance on March 26, 1912, recorded March 4, 1915, to J. P. Daniel, and Daniel conveyed to defendant in August, 1915. There was no proof that any of these persons were in fact stockholders at the time they made the conveyances, or that any of them had ever been stockholders except Gifford and Wilson, who by reason of identity of names may be assumed to be among those who were directors and left Texas owing the corporation, which was heavily insolvent, more than they had ever paid in.

The only assignment of error is directed at the ruling of the court in admitting in evidence the deed from the Laredo Real Estate & Abstract Company by W. R. Pace president to the city of Laredo. he propositions urged are: (1) That the forfeiture of a charter by the secretary of state for nonpayment of franchise tax takes all authority away from the corporation to act; (2) that such a forfeiture in 1895 did not place property in the hands of one officer of the corporation to act as trustee for creditors and stockholders so that said officer could sell lands without authority of the board of directors; (3) that the dissolution of a corporation places all property in the hands of the president and directors as trustees for the benefit of creditors and stockholders, and to convey real estate the directors must join the president.

[1-6] The propositions are abstract and fail to point out which objection, out of the many urged against the deed, should have been sustained. If the propositions be taken as correct and applied, it still appears that Pace, the owner of three-fifths of the stock, conveyed a three-fifths interest in the blocks described in the deed. Aransas Harbor Co. v. Manning, 94 Tex. 558, 63 S. W. 627. This is admitted by appellant. That admission necessarily carries with it the proposition that the court did not err in admitting the deed in evidence, and that appellant's attack should have been directed at the judgment, and not at the ruling in admitting the deed in evidence. The propositions assert the rules of law ordinarily applicable when a corporation is dissolved. As applied to the facts of this case, if there had been a dissolution of the corporation, a modification might be proper. Our statute, it is true, makes all the directors trustees, and ordinarily all trustees must join in an act or one must act for all, thus becoming the agent of the others. Perry on Trusts, § 411 (note a). Our statute contains the further provision (R. S. 1895, art. 683) that the trustees thus created by dissolution shall be severally responsible to the creditors and stockholders of the corporation to the extent of its property and effects that shall have come into their hands. In this case the directors, other than Pace, had left the country, and, it is clear, had abandoned the trust, and owed the corporation more than they had paid in. Pace testified to full authorization by them to him to act, and their subsequent conduct might constitute a ratification. However, if we are called upon by any rule relating to fundamental error to go further than to pass on the only assignment presented, it appears to us that the merits of the case are not to be determined upon any theory that the corporation was dissolved.

[7, 8] The petition contains the allegation that the right of the company to do business was forfeited for nonpayment of franchise tax for the year ending April 30, 1895, and thereby the charter was forfeited, and that such forfeiture took place on or about April 30, 1895. These allegations were admitted to be true. There was no evidence on the point. We do not regard the averments as stating any fact except that the franchise tax was not paid on or before April 30, 1895. The pleader then states his conclusion of law that such failure had the effect of forfeiting the right to do business and forfeiting the charter. Appellant so construes the pleading when he states in argument that the secretary of state had forfeited the charter, if he had authority to do so, and that there was no act of court decreeing a dissolution, no expiration of charter, and no dissolution by agreement. Article 5243i, R. S. 1895, after providing for the payment of a franchise tax, contained the following statement:

"Any such corporation which shall fail to pay the tax provided for in this article shall, because of such failure, forfeit their charter."

The next article provided for publication of a list of such delinquents by the secretary of state, and that payment by a corporation of the tax and a penalty within 60 days after such publication should relieve it from forfeiture of its charter. Aside from the relief act, approved March 29, 1895, effective 90 days after adjournment, there was no legislation on the subject until chapters 104 and 120 of the Acts of the Twenty-Fifth Legislature (1897) were passed. It therefore appears that at the time the transaction took place involved in this case the provisions above copied and referred to as embraced in the Revised Statutes of 1895 were in force. Those provisions did not bring about a forfeiture of the charter of a delinquent corporation, but merely established a ground for forfeiting the same which could only be

taken advantage of by the state and used as the basis for a judicial forfeiture. Fox v. Robbins, 62 S. W. 815; Fox v. Robbins, 70 S. W. 597 (writ of error denied); G., H. & S. A. Ry. Co. v. State, 81 Tex. 572–596, 17 S. W. 67; Lumber Co. v. Ward, 30 W. Va. 43, 3 S. E. 227; Murphy v. Wheatley, 102 Md. 501, 63 Atl. 62; Cook on Corporations (7th Ed.) § 637, p. 1969. After the amendment of 1897 the statute was several times given the same construction by our courts. Canadian Club v. Johnson, 176 S. W. 835, and cases therein cited. In 1895 the statute contained no provision forfeiting the right to do business (if such a provision could be held to extend further than to the ordinary and usual business of the corporation), and therefore no reason is apparent why the corporation in question could not make a valid conveyance to the city in satisfaction of its debt at the time Pace made the conveyance in question. It is true that no authorization by the board of directors by entry on the minutes was shown. However, the uncontradicted testimony of Pace shows that his act was acquiesced in and approved by the stockholders, and that by such act he obtained the delivery and cancellation of the notes held by the city, which were secured by a vendor's lien on the blocks thus conveyed. The deed by Pace was recorded November 28, 1896, so that it appears that for about 30 years the stockholders took no steps to question Pace's authority. In fact, they have never done so, unless it can be held that the execution of the quitclaim deeds constitutes a repudiation of the deed. The grantors, when they mentioned lots or blocks, may have referred to others than those described in such deed. The only person who questions the deed is defendant, who claims the right to do so because he claims that the conveyances he procured vested in him such a right to do so as his grantors had. The city never parted with the superior title evidenced by the express retention of the vendor's lien to the land in controversy, and if a recovery thereon is now barred by statute, the city has been lulled into a sense of security by the failure of the stockholders to disaffirm the act of their president.

[9] Under the facts of this case the acquiescence of the stockholders should be held to amount to a ratification. In Ft. Worth Pub. Co. v. Hitson, 80 Tex. 216, 14 S. W. 843, 16 S. W. 551, the court said:

"An express assent, it is said, is not essential on the part of the stockholders to operate as an equitable estoppel upon them. It may be inferred from the failure to promptly condemn the unauthorized, although not illegal, act and to seek judicial redress."

In Harwood v. Bank, 205 S. W. 490, the court said:

"The assent or approval of a corporation to acts done on its own account may be inferred in the same manner that the assent of a natural person may be, and it is well settled that, where a corporation, with full knowledge of the unauthorized act of its officers or agents, acquiesces in and consents to such acts, it thereby ratifies them, especially where the acquiescence results in prejudice to a third person. It would seem that in order for acquiescence to amount to ratification, without knowledge of the unauthorized act, it should generally appear that the party dealing with the unauthorized officer or agent should have been prejudiced, damaged, or misled thereby. 7 Ruling Case Law, § 666."

Applying the quoted rules to the facts of this case, it is manifest that the judgment is correct.

There can be no doubt that, even if the deed was wholly unauthorized, and even if it had never been ratified, the city would have been entitled to judgment on its superior title fully alleged and admitted, unless such right was destroyed by the provisions of articles 5694 and 5695, R. S. 1911; Rock Hill Country Club v. Nix, 198 S. W. 155. If the statutes in question are limitation statutes, as held by this court in Bunn v. City of Laredo, 208 S. W. 675, the city is entitled to judgment on its title thus shown for the reason that limitation was not pleaded. A writ of error was granted in the last-cited case. We have not secured a copy of the notation made by the Supreme Court, but it must have had doubt whether the statutes are limitation statutes. If our said holding is correct, it furnishes an additional ground for affirming the judgment.

Judgment affirmed.