ROBERT KUCERA, *etc., et al.*

*v.*

THE CITY OF WHEELING, *etc.*

(No. 12833)

Submitted June 24, 1969.          Decided July 15, 1969.

Rehearing Denied November 4, 1969.

*Hostler & Verst, Stanley M. Hostler,* for appellants.
*George G. Bailey, George B. Vieweg, III,* for appellee.

CAPLAN, JUDGE:

This is an appeal from a judgment entered in the Circuit Court of Ohio County under the Uniform Declaratory Judgments Act. In this action the plaintiff sued individually and on behalf of other persons similarly situate as paid fire fighters employed by the City of Wheeling, one of the defendants, seeking to have the court declare that the city be required to pay them compensation for overtime work pursuant to the provisions of Chapter 21, Article 5C of the West Virginia Code of 1931, as amended. After a pretrial conference at which the questions involved were formulated, and after consideration of the briefs and oral arguments of the parties, the court, by order dated March 11, 1969, held that the plaintiff and others similarly situate, hereinafter called plaintiffs, were not entitled to such overtime compensation and entered judgment dismissing the action of the plaintiffs.

Upon obtaining an appeal from that judgment, the plaintiffs requested the Court for leave to move to reverse. Said leave having been granted, pursuant to Code, 1931, 58-5-25 and Rule IX of the Rules of this Court, the

case was submitted for decision upon the original record, upon typewritten briefs and upon oral argument of counsel.

As alleged in the complaint, Chapter 39, Acts of the Legislature of West Virginia, Regular Session, 1966, was enacted, the effective date thereof to be ninety days from passage. This law, now designated as Code, 1931, 21-5C, as amended, provides for minimum wages and hours in employment, and, where pertinent to the decision of this case, reads as follows:

21-5C-1.

\* \* \*

(e) "Employer" includes the State of West Virginia, its agencies, departments, and all its political subdivisions \* \* \*.

(f) "Employee" includes any individual employed by an employer but shall not include \* \* \* (2) any individual employed by the United States and any individual employed as a fire fighter by the State or any agency thereof \* \* \*.

21-5C-3.
(a) On and after January one, one thousand nine hundred sixty-seven, no employer shall employ any of his employees for a workweek longer than forty-eight hours, unless such employee receives compensation for his employment in excess of hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

The plaintiffs further allege that by reason of the passage of the above act they caused to be forwarded to the Mayor of the City of Wheeling a letter demanding compliance with the said wage and hour law. Also, they demanded that they receive retroactively overtime compensation due from January 1, 1967. Upon the failure of the mayor or any other city official to reply the plaintiffs instituted this action.

Basically the answer of the defendants denies that the provisions of Code, 1931, 21-5C, as amended, have

any application to the plaintiffs, alleging that they are expressly excluded from the coverage of said statute. They assert that the City of Wheeling is an agency of the State of West Virginia, which results in such exclusion.

We are called upon, in view of the statutory language of subsections (e) and (f), quoted above, to determine whether or not the City of Wheeling is an agency of the state within the meaning of said statutes. If the defendant city is an agency of the state, as it contends, then, pursuant to the provisions of subsection (f), the plaintiff and those similarly situate are individuals employed as fire fighters by the "State or any agency thereof" and are excluded from receiving compensation for hours worked in excess of forty eight in a workweek, as provided in Code, 1931, 21-5C-3, as amended. On the other hand, if the defendant city is not a state agency within the meaning of the pertinent statutes, the plaintiffs are not employees of a state agency, are not excluded and are entitled to the coverage afforded by said wage and hour law.

We are of the firm opinion that the City of Wheeling is not an agency of the state within the meaning of the pertinent statute. Clearly, the legislature did not intend such connotation. In Section 1 (e) the legislature provides that an employer covered by this act includes the state, its agencies, departments and expressly includes all political subdivisions of the state. It is significant that when "Employee" is defined in subsection (f), the legislature stops short of including political subdivisions in the exclusionary clause. Thus, it was provided that all employees are covered by the wage and hour law except, for the purpose of this case, "any individual employed as a fire fighter by the State or any agency thereof." Significantly, political subdivisions were omitted. Why were they omitted in this subsection but included in subsection (e)? Clearly, we believe, because the legislature did not intend to exclude fire fight-

ers regularly employed by a municipality from the operation of this law. Had it so intended it easily could have included the term "political subdivision" in subsection (f) and thereby could have effectively excluded such fire fighters. These subsections must be read together and full meaning must be accorded each. When this is done it becomes clear that the legislature assigned different meanings to the terms "political subdivision" and "agency of the state."

A cardinal rule relating to statutes is that where a statute is free from ambiguity, its plain meaning is to be accepted without resort to the rules of interpretation. In this situation there is no occasion for interpretation by a court. *Dotson* v. *VanMeter,* 151 W. Va. 56, 150 S. E. 2d 604; *State ex rel. Bess* v. *Black,* 149 W. Va. 124, 139 S. E.2d 166; *Robertson* v. *Hatcher,* 148 W. Va. 239, 135 S. E.2d 675. In Pt. 1 of the syllabus of *Dunlap* v. *State Compensation Director,* 149 W. Va. 266, 140 S. E.2d 448, this Court said: "Where the language of a statute is plain and unambiguous, there is no basis for application of rules of statutory construction; but courts must apply the statute according to the legislative intent plainly expressed therein."

Applying the above quote to the instant case, we are of the opinion, for the reasons herein stated, that the statute clearly reflects the legislative intent to exclude from the operation of Code, 1931, 21-5C, as amended, only a fire fighter employed by the state or by an agency of the state. By reason of the language of subsections (e) and (f) it is equally clear that firemen regularly employed as such by a municipality, a political subdivision of the state, shall come within the protection afforded by Code, 1931, 21-5C-3, as amended.

We come now to the principal contention of the defendants—that "political subdivision" and "agency of the state" are synonymous terms and that the City of Wheeling is therefore an agency of the state. In support of this contention several cases are cited. Admittedly some

of these cases use the term "agent of the state" when speaking of a municipality. In *Hornbrook* v. *Town of Elm Grove,* 40 W. Va. 543, 21 S. E. 851, 28 L.R.A. 416, the town was alluded to as follows: "* * * a town is a part of the government, delegated as the agent of the state to administer government in its stead in a given locality and in certain respects * * *." Again, in *Hope Natural Gas Company* v. *West Virginia Turnpike Commission,* 143 W. Va. 913, 105 S. E.2d 630, municipalities were referred to generically as " 'agents' exercising police power and other soverign powers of the state as delegated to them by the legislature."

We do not agree with the above contention of the defendants; nor do we believe that the authorities cited by them support their position in relation to the instant case. It is obvious from the use of the language employed in the opinions of the cited cases that there was no intention to classify a municipality as an arm or agency of the state. Clearly, these opinions refer to cities as agents of the state in most limited terms. The exercise of the soverign power of the state by a city for limited and particular purposes does not make that city an agency of the state within the accepted meaning of that term. "The attributes which are generally regarded as distinctive of a political subdivision are that it exists for the purpose of discharging some function of local government, that it has a prescribed area, and that it possesses authority for subordinate self-government through officers selected by it." *Dugas* v. *Beauregard,* 155 Conn. 573, 236 A.2d 87. Thus, the distinction between a political subdivision and an agency of the state, even though the former may perform a limited function of the state, is readily apparent.

In numerous jurisdictions throughout the land cities are held to be political subdivisions under various types of statutes and constitutional provisions. *City of Albuquerque* v. *Campbell,* 68 N. M. 75, 358 P. 2d 698; *City of Miami* v. *Lewis,* Fla. App., 104 So. 2d 70; *City of Norwalk*

v. *Daniele,* 143 Conn. 85, 119 A.2d 732; *Kinney* v. *City of Astoria,* 108 Or. 514, 217 P. 840. Such entities are considered to be an incorporation of inhabitants of a specified area for purposes of local government. *San Mateo County* v. *Coburn,* 130 Cal. 631, 63 P. 78.

On the other hand, the connotation of a "state agency," as generally applied, is broader than that of a political subdivision. The acts of such agency are statewide in nature; when it acts, it acts for the state in the administration of state affairs; funds for its operation are appropriated by the legislature. See *State ex rel. City of Morgantown* v. *Ducker,* 153 W. Va. 121, 168 S. E. 2d 298 and *Hesse* v. *State Soil Conservation Committee,* 153 W. Va. 111, 168 S. E.2d 293 (both decided at this term of court). As noted in the *Hesse* case, we think it significant that the legislature in defining "state agency" specifically excluded "municipalities, or any other political or local subdivision of the State * * *." Code, 1931, 14-2-3, as amended.

The learned trial judge said, in effect, that if the exclusion contained in subsection (f) includes only casual fire fighters occasionally employed by the Conservation Commission, then such exclusionary clause is meaningless. In view of the language of this statute, as herein discussed and of practical considerations, we believe that such fire fighters are in fact the principal target of the legislature in creating such exclusion. Great portions of the peaks and vales of our fair state are heavily timbered. While this lends scenic beauty, it also presents a significant potential fire hazard. The serious nature of this hazard is reflected by legislation enacted which provides that the state forester or any conservation officer may employ persons to detect fires and may summon or employ persons to assist in extinguishing fires. In fact, one who, without cause, refuses to so assist may be guilty of a misdemeanor. Code, 1931, 20-3-4, as amended. Demonstrating further the seriousness with which the legislature regards the threat of forest fires are the provisions

of Code, 1931, 20-3-20 and 25, as amended, whereby the state is authorized to execute compacts with other states in an endeavor to prevent and combat forest fires. We believe, therefore, that the exclusionary clause of sub-section (f), referring largely to the numerous persons who may be called upon to fight forest fires, is meaning-ful.

We have considered the defendants' contention re-lating to maximum hours of duty for firemen as con-tained in Code, 1931, 8-6-9, as amended, and find it to be without merit. That statute permits the members of a paid fire department by majority vote to determine its schedule of hours in a twenty-four hour period. It does not, however, give them the right to designate a total number of work hours in excess of those specified in Code, 1931, 21-5C-3, as amended.

For the reasons stated herein the motion to reverse is granted, the judgment is reversed and the case is re-manded to the Circuit Court of Ohio County for further proceedings in accordance with the principles enunciated in this opinion.

*Motion to reverse granted.*